ALBANY,
August, 1810.

UPTON *against* VAIL.

UPTON
v.
VAIL.

THIS cause came before the court, on *certiorari*, from a justice's court. The suit below was a special action on the case against *Upton*, for " falsely and deceitfully" recommending one *Daniel Brown*, jun. to *Vail*, as a man of property, whereby *Vail* was induced to give credit to *Brown*, and, afterwards, lost his debt. The facts, as they appeared before the justice, upon the trial, were, as follows : *Upton* had a judgment bond against *Brown*, bearing date the 5th of *March*, 1808, and conditioned to pay 550 dollars. On the 10th of *March*, 1808, he went with *Brown* to the house of *Vail*, where *Brown* applied for goods upon credit, and *Vail* asked *Upton* as to the solvency of *Brown ;* and *Upton* said, he was good, and as good as any man in the county for that sum. *Vail*, accordingly, trusted him with goods, to the amount of 10 dollars, and took his note, payable the 1st of *October* following. On the 25th of *March*, 1808, *Upton*, caused an execution to be issued on his judgment, and took, and sold all the property of *Brown ;* and among which was the property that *Brown* had received of *Vail*, upon the credit abovementioned. This was confessed by *Upton*, who said that *Brown* had no property, and was worth nothing ; and that he had taken the goods which *Brown* received of *Vail*, and had a right so to do, and would do so again. All this happened before *Brown's* note fell due. Upon these facts, the justice gave judgment against *Upton*.

The cause was submitted to the court without argument.

KENT, Ch. J. delivered the opinion of the court. Deceit, in the recommendation of *Brown*, was the *gist* of

A. applied to B. for goods on a credit, and B. asked C. as to the solvency of A. and C. answered that A. was good, and as good as any man in the county, for that sum ; though C. at the time, had a judgment against A., and knew he was insolvent. B. having lost his debt, brought an action on the case, against C., for falsely and deceitfully recommending A. It was held, that an action for a *deceit*, on a *parol* affirmation, as to the credit of another, will lie. *Fraud* or *deceit*, with damage, is a good cause of action.

this action; it was a conclusion which the justice was to draw from the facts; and I think the facts did warrant that conclusion. There is no cause to disturb the judgment below, on the ground that it is not supported by proof. The judgment of the justice was here a substitute for the verdict of a jury, and the facts would well have justified a jury, to have drawn the inference of a premeditated fraud. But one of the points stated on the part of the plaintiff is, that this action will not lie at all, without the showing some note, or *memorandum* in writing, to charge the party; and this objection was made at the trial below.

We have never expressly decided in this court, that the action would lie. In *Ward* v. *Center*, (3 *Johns. Rep.* 271.) the question was incidentally raised, but no opinion expressed by the court, because the motion, in that case, was for a new trial, and not in arrest of judgment. The case of *Paisley* v. *Freeman*, decided in the K. B. so late as the year 1789, (3 *Term Rep.* 51.) is the first direct authority, in the *English* courts, in support of the action. I have carefully examined the reasoning of the judges in that case, and in the subsequent cases, which go to question, or support the soundness of that decision; and I profess my approbation of the doctrine on which it was decided. The case went not upon any new ground, but upon the application of a principle of natural justice, long recognised in the law, that fraud or deceit accompanied with damage is a good cause of action. This is as just and permanent a principle as any in our whole jurisprudence. The only plausible objection to it is, that in its application to this case, it comes within the mischiefs which gave rise to the statute of frauds, and that, therefore, the representation ought to be in writing. But this, I apprehend, is an objection arising from policy and expediency; for it is certain, that the statute of frauds, as it now stands, has nothing to do with the case. The

case of *Paisley* v. *Freeman* has received a decided sanction, by a succession of learned judges, in the several courts of *Westminster Hall;* and I observe that the action is sustained without contradiction in the courts in *Connecticut.* (*Eyre* v. *Dunsford,* 1 *East,* 318. *Haycraft* v. *Creasy,* 2 *East,* 92. *Tapp* v. *Lee,* 3 *Bos.* & *Pull.* 367. *Harnar* v. *Alexander,* 5 *Bos.* & *Pull.* 241. 1 *Campbell's N. P.* 4. 277. *Wise* v. *Wilcox,* 1 *Day's Cases in Error,* 22.) In one of the cases, Sir *James Mansfield* says, "I am far from wishing to sustain an action simply upon misrepresentation; but there never was a time in the *English* law, where an action might not have been maintained against the defendant for this gross fraud." Lord *Eldon* has, indeed, expressed his dissatisfaction with the case of *Paisley* v. *Freeman;* and he thought that the statute of frauds and perjuries ought to be applied to the case. (*Evans* v. *Bicknell,* 6 *Vez.* jun. 186.) He is, undoubtedly, a very respectable authority; but as far as mere authority goes, the preponderance is vastly on the other side. The courts of law have been uniformly against him; and even his successor, Lord *Erskine,* has declared himself, in the strongest terms, in favour of the suit. "As to the danger from a single witness," he observes, "is not one sufficient for conviction of a capital crime? That objection goes to the very root of the law, which is uniform in principle and practice, with the single exception of the case of perjury, as there is oath against oath. The case of *Paisley* v. *Freeman,* therefore, stands upon the clearest principles of jurisprudence, and has no connection with the statute of frauds, which applies, where one man undertakes for the debt of another." (13 *Vez.* 133.) But independent of the *English* cases, I place my opinion upon the broad doctrine that fraud and damage coupled together, will sustain an action. This is a principle of universal law, and I consider it as deserving of particular notice, and, in a ques-

ALBANY,
August, 1810.

UPTON
v.
VAIL.

tion depending upon general principle, as adding no inconsiderable weight to the accumulation of authority, that the same doctrine is laid down by *Pothier*. (*Traité du contrat de mandat, art.* 21.) It is drawn by him from the text of the *civil law,* where it is supported by the sanction of *Ulpian*. (*Dig.* 50. 17. 47.) *Consilii non fraudulenti nulla obligatio est, cæterum si dolus et calliditas intercessit, de dolo actio competit.* "If," says *Pothier*, "you had only recommended *Peter* to his creditor, as honest, and able to pay, this was but advice, and not any obligation ; and if *Peter* was, at the time, insolvent, you are not bound to indemnify the creditor for the sum which he loaned to *Peter*, by means of your advice, and which he has lost. *Nemo ex consilio obligatur.* The rule is the same, if the advice was given rashly and indiscreetly, without being duly informed of the circumstances of *Peter*, provided it was sincerely given. *Liberum est cuique apud se explorare an expediat sibi consilium.* But if the recommendation was made in bad faith, and with knowledge that *Peter* was insolvent, in this case you are bound to indemnify the creditor."

The court are, accordingly, of opinion, that the judgment below must be affirmed.

<div align="right">

Judgment affirmed.