Gheen, J.
delivered the opinion of the court.
This is an action on the case, brought by the defendant in error, to recover damages for an injury done by reason of the fraud of the plaintiff in error. The declaration alledges, that Nathan A. Forest, the son of the plaintiff, Nancy, purchased a horse of the defendant, for the use of his mother as a riding horse, and that the defendant represented, that the horse was gentle and suitable for the said Nancy to ride; whereas, the said horse was vicious, easily frightened, and accustomed to runaway; all which was well known to the defendant; and that the said Nancy relying on the said false representations of the defendant, and not knowing the contrary thereof, rode the said horse, and when so riding, the horse ran off and threw the said Nancy, and kicked and tramped upon her, whereby she was greatly wounded, bruised and injured, &c.
The defendant pleaded not guilty. The jury found for the plaintiffs four hundred dollars damages. The defendant moved in arrest of judgment, which was overruled — he also *450 moved for a new trial, which was refused, and he appealed to this court.
This is a novel case in its facts and circumstances, but it depends upon principles that have long been recognized both in English and American courts. It is one of the oldest principles of the common law, that in all cases where a person sustains a temporal loss, or damage by the wrong of another, an action on the case lies at the suit of the party injured to repair the damage. 1 Com. Dig. 278, Action on the case. Whether this wrong be done to one’s property, or by fraudulent representations affecting thé value of an article sold, or by fraudulent representations upon other subjects, the immediate effect of which is an injury to the party to whom they were made, can make no difference in principle. In either case, the damage results from the wrong of the other party, and he ought to repair it.
The case of Pasley vs. Freeman, 3 T. R. 51, was an action for falsely and deceitfully representing, that a party was solvent and able to pay, whereby the plaintiff was induced to give him credit, and by reason of his insolvency the debt was lost. All the Judges, with the exception of Grose, J., held that the action should be sustained. Not that the telling of a bare naked lie is actionable, but that the falsehood was told with a view to deceive and impose upon the plaintiff. The- case of Pasley vs. Freeman, has been constantly referred to as testimony, in the English courts, ever since it was decided. The same principle is recognized and adjudged by the Supreme Court of New York, in the case of Upton vs. Vail, 6 John. Rep. 181; that was a suit against Upton for “falsely and deceitfully” recommending one Daniel Brown to Vail, as a man of property, whereby Vail was induced to give credit to Brown, and afterwards lost his debt. Ch. J. Kent, in delivering the opinion of the court, says: “But independent of the English cases, I place my opinion upon the broad doctrine, that fraud and damage, coupled together, will sustain the action.” The case of Alien vs. Addington, 7 Wend. R. 1, goes farther than either of the cases above referred to. In that case, Allen was induced to sell goods on a credit to Baker by means of a letter which Adding- *451 ton addressed to Wilson, and which was shown to Allen’s clerk. In the letter to Wilson, Addington says: “Mr. Baker is going to' your city to buy goods; he has been a merchant some years at Aurora, Erie county; has bought his goods at Buffalo, Utica, and elsewhere, heretofore. Any assistance you may give him by way of buying, would be thankfully acknowledged, he being an acquaintance of mine.” This letter was delivered to Wilson by Baker, who afterwards referred Allen’s clerk to Wilson. The facts stated in the letter were true, but Addington, the writer, knew at the time he wrote it, that Baker was insolvent. He held two judgments himself against Baker, amounting to near $1,500, and a warrant of attorney to confess a judgment for $760. He was Baker’s uncle, and advised him to go to New York and get what goods he could. All these facts were concealed, and Baker obtained the goods upon the implied recommendation in Addington’s letter to Wilson.
After Baker had obtained the goods, he was sold out by Ad-dington, who bought all the goods himself. The action in this case was sustained. The court say: “It must, therefore, be considered as settled, both in England and in this State, that an action lies for a false recommendation of a third person, by which the plaintiff sustains damage, provided such recommendation be made with the intention to deceive and defraud the plaintiff. Such information must be communicated to the plaintiff, and must be relied on and cause the damage.
If a person intending to defraud somebody, gives a general recommendation of credit to an insolvent person, any one who sustains damage by reason of such recommendation, is entitled to an action for such damage, grounded on the fraud. See also the case of Yeates vs. Joyce, 11 John. R. 186,and the case of Aldridge vs. Stuyvesant, 1st Hall’s R. 210, where the action on the c,ase is sustained upon the same principle, though, in application to a state of facts, somewhat different. And in the late case in the English Court of Exchequer, of Langridge vs. Levy, 2 Meeson & Welsby, 519, the principle under discussion, was applied to a state of facts, very similar to the case now before the-court. The plaintiff’s father purchased of the' defendant a gun, for the purpose of being used by himself and his sons, *452 which the defendant falsely warranted to have been made by N. (a gun maker of distinction,) and to be safe and secure, knowing at the same time that the gun was not made by N., and that it was composed of inferior materials. And shortly after the purchase the plaintiff lost his arm by the explosion of the gun while using it. It was held, that an action on the case for a fraudulent misrepresentation lay against the defendant, for he had knowingly sold the gun to the father, for the purpose of being used by the plaintiff, and had knowingly made a false warranty, that it might be safely used, in order to effect the sale; and the plaintiff believing the representation to be true, used the gun, whereby he sustained the damage. There was fraud, and damage, the result of that fraud, not from any act remote and consequential, but one contemplated by the defendant at the time, as one of its results. The court says: “We decide that the defendant is responsible in this case for the consequences of his fraud, while the instrument was in the possession of a person, to whom his representation was either directly or indirectly communicated, and for whose use he knew it was purchased.”
It seems, that if the gun had been used by a person, not in the contemplation of the defendant at the time he made the representation, he would not be responsible. See 2 Leigh’s N. P. 1076.
These cases show, that wherever a party is guilty of a fraud, and injury results as the immediate consequence to the person on whom the fraud was practised, an action will be sustained to repair the damage. The motion in arrest of judgment was, therefore, properly overruled.
2. But it is said, the evidence did not authorize the verdict, and that a new trial ought to have been awarded. We do not think so. The evidence shows, that Allison knew that Forest wished to purchase the horse for his mother to ride, and that she desired a gentle horse; and although he did say', a woman’s' saddle had never been on the horse; yet he said, if Mrs. Tyson was a good rider the horse would suit her. He spoke of the service the horse had been engaged in, under the management of a negro woman, in a way calculated to give assurance that *453 he was gentle; and he suppressed the fact, that the horse had run off with his son, had thrown himself on one occasion, and was in fact, a wild, vicious, and ungovernable animal. The plaintiff, Nancy, rode the horse on the faith of Allison’s representation of his fitness for that service, and while so riding him, he took fright, plunged and threw her oil, kicking her as she fell, by which means she was greatly'injured, her life endangered, and she is rendered a cripple for. life.
We think the jury were warranted from this proof, to render the verdict in this cause.
Affirm the judgment.