Jacobsen v. Dodd.

*Mr. R. Wayne Parker*, for appellant, cited :

*Rec'rs Midland* v. *Wortendyke, 12 C. E. Gr. 658 ; Bigelow on Estoppel (ed. 1872) 474, 477 ; Winchell* v. *Edwards, 12 Law Reg. (N. S.) 255, 57 Ill. 41 ; Corkhill* v. *Sanders, 44 Barb. 218 ; Stewart's Digest, Estoppel §§ 58, 67, 75, 76, 87, 131, 133, 165, 167, 173, Corporations § 110.*

*Mr. John Linn*, for respondents, cited :
*Hewitt's Case, 10 C. E. Gr. 211.*

Per Curiam.
The decree in this case unanimously affirmed.

---

William E.. Jacobsen and wife, appellants,

*v.*

George F. Dodd, respondent.

That a mortgage was given for the temporary accommodation of the mortgagee ; that he intended to use it only as collateral security, and that he falsely represented himself then to be solvent, are no defence to such mortgage in the hands of a *bona fide* assignee, for value, without notice, who holds it under an absolute assignment.

---

On appeal from the following decree, advised by Amzi Dodd, esq., a special master :

The Master.:
This cause coming on to be heard in the presence of Geo. F. Tuttle, of counsel with the complainant, and Abram M. Hassell, of counsel with the defendants, it was ordered by the chancellor, by and with the consent of said counsel of said complainant and said defendants, that it be referred to Amzi Dodd, esquire, one of the advisory masters of this court, to hear the proofs and allegations of said parties

respectively, and the said counsel having appeared before the said advisory master, and the said master having heard and duly considered the pleadings, proofs and arguments of the respective parties, and advised his honor, the chancellor, that the complainant is entitled to the relief sought and prayed by him in his bill of complaint filed in this cause, and that there is due to the said complainant, upon his bond and indenture of mortgage in his said bill of complaint set forth, on this 28th day of October, in the year 1879, the sum of $2,570.36:

DECREE.

It is on this 28th day of October, in the year last aforesaid, by his honor, Theodore Runyon, chancellor of the state of New Jersey, ordered, adjudged and decreed, and the said chancellor doth, by virtue of the power and authority of this court, hereby order, adjudge and decree that the said mortgaged premises be sold to raise and satisfy to the said complainant the said sum of $2,570.36, so due to him as aforesaid, together with lawful interest thereon, to be computed from the date hereof, with the complainant's costs to be taxed, and a counsel fee of      dollars to the said complainant, and that a writ of *fieri facias* do issue for that purpose out of this court, to be directed to the sheriff of the county of Essex, commanding him to make sale according to law of the said mortgaged premises, and that, out of the money arising from such sale, he pay to the complainant, or to his solicitor, his said debt, interest and costs, and in case more money should be raised by such sale than shall be sufficient to answer such payments, that such surplus be brought into this court to abide the further order of the court, unless otherwise previously disposed of by the order of this court, and that the said sheriff make return without delay of his proceedings by virtue of the said writ. And in case the proceeds of said sale shall be insufficient to satisfy and discharge the said mortgage debt, then it is hereby further ordered, adjudged and decreed that said deficiency

shall bo made of the lands and tenements, goods and chat-tels of the said defendant, William E. Jacobsen, as specific-ally prayed in the bill of complaint filed in this cause, it appearing to the court that notice that such relief was sought by said bill has been duly served and given to said defendant, according to law and the rules of this court, and that a writ of *fieri facias* therefor do issue accordingly out of this court against said defendant for that purpose, pay-ment of the said deficiency being hereby decreed to be made by the defendant, and that the sheriff make return to this court of his proceedings by virtue of the said writ.

And it is further ordered, adjudged and decreed that the defendants stand absolutely debarred and foreclosed of and from all equity of redemption of, in and to the said mort-gaged premises, when sold as aforesaid by virtue of this decree.

*Mr. A. M. Hassell,* for appellants.

The appellants insist that, at the time when the respond-ent purchased the bond and mortgage from Hugh Holmes, there was a valid defence to the same, which would have avoided them in the hands of said Hugh Holmes. That said defence, existing before and at the time of purchase, is now valid, though the instruments are in the hands of a *bona fide* purchaser for value.

The defence existing at the time the instruments were assigned to the respondent, was

(1) Fraud; (2) Want of consideration.

I. The fraud consisted in this: A deceitful and false representation by Hugh Holmes to the appellants, by which he induced them to execute the instruments to him, intend-ing and knowing they would and did act thereon. The false statements made were, first, that he wanted the instru-ments to deposit with a creditor of his, and that this creditor was to hold it for security *merely*, for an antecedent debt; second, the false representation as to his financial condition.

II. The other defence is, the want of consideration. In itself this is a perfect defence against these instruments under the testimony in this case. I do not pretend to advance or advocate the doctrine that a man may execute a bond and mortgage to another with the intent and purpose that the mortgagee shall make such disposition of it as he chooses, in order to raise money thereon to help himself, and that, in such a case, the want of consideration may be set up as against a *bona fide* holder for value. What I do desire is, that this court take · notice of the distinction between such a state of facts and the present case, and that the court will take notice of the facts in this case as establishing the case of a man who has been tricked into the execution of the instrument sought to be enforced, and in such a case the doctrine of estoppel has never been applied against the grantor.

The first insistment is, that deceit was practiced upon us by Hugh Holmes to obtain the bond and mortgage, and a fraudulent representation made as to his financial status; that the respondent was not a creditor who was pressing Hugh Holmes for a settlement of his claim, and was willing to take our mortgage as a collateral security to the debt. It was said below that this last representation could not avail the appellants, because we do not show that Holmes *knew it to be false when made;* in other words, it was incumbent on us to show the *scienter.* This is true if the case was tried by the rules of the common law; but it is not true as tried by the principles of equity. The rule in equity is as follows : Whether the party misrepresenting a material fact knew it to be false or made the assertion without knowing whether it were true or false, is *wholly immaterial (Wright* v. *Snowe, 2 DeG. & Sm. 321);* for the affirmation of what one does not know or believe to be true, is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false. *Anslie* v. *Medlycott, 9 Ves. 21; Taylor* v. *Ashton, 11 M. & W. 401; Doggett* v. *Emmerson, 3 Story C. C. 733.* And even if the party innocently misrepresents a

Jacobsen v. Dodd.

material fact by mistake, it is equally conclusive, for it operates as a surprise and imposition upon the other party. *1 Story's Eq. Jur. (10th ed.)* § *193,* and cases cited.

Again, it is said : If a man, upon a treaty for any contract, makes a false representation, whether *knowingly or not* (*Anslie* v. *Medlycott, 9 Ves. 21 ; Graves* v. *White, Freem. 57 ; Scott* v. *Scott, 3 Ves. 458, 1 Cox 365*), by means of which he puts the party bargaining under a mistake upon the terms of bargain, it is a fraud relievable in equity. *Neville* v. *Wilkinson, 1 Bro. C. C. 546 ; Evans* v. *Bricknell, 6 Ves. 174 ; Burroughs* v. *Lock, 10 Ves. 475 ; De Mannerville* v. *Crompton, 1 Ves. & B. 355.* See *1 Madd. Ch. (3d Am. ed.) 262.*

Hence, the distinction between actual fraud, or that where there is an *intent* shown (which is the kind the common law deals with), and constructive fraud, a creature of equity, which includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence justly reposed, and are injurious to another. *1 Story's Eq. Jur. (10th ed.)* § *187.*

The respondent meets this defence by alleging that the consideration received by us was two $1,000 mortgages and a deed, and the good will we entertained toward Holmes. In answer to this we say, that any securities *voluntarily* handed to us by Holmes, after the contract and execution thereof by all parties to it, could in no way prejudice us.

*Mr. George F. Tuttle,* for respondent.

I. The evidence shows that the respondent was the *bona fide* assignee, for full value, of the bond and mortgage in suit, and without notice of any fraud in the giving of the mortgage, if any there was; his rights, therefore, should be protected.

II. The facts insisted on as constituting fraud, even if true, are immaterial, and made no difference to the appellants. Holmes's failure left the same, and only the same, responsibility upon them in either event.

III. But the evidence shows that there was no such state of facts existing as is claimed to constitute fraud. The appellants received, by assignment, in exchange for the mortgage in suit, two mortgages for $1,000 each, had the assignment recorded, and afterwards, with full notice of the respondent's rights, deliberately passed these mortgages away, thus putting it out of their power to tender them back.

The mortgage in suit was, therefore, not without consideration, and the rights of the respondent, as assignee thereof in good faith and for value, are valid. *Cornish* v. *Bryan, 2 Stock. 146.*

The opinion of the court was delivered by

DEPUE, J.

This bill was filed by the respondent to foreclose a mortgage made by the appellants. The mortgage was given to one Hugh Holmes as mortgagee, and is for the sum of $2,000. It was executed on the 1st of October, 1875, acknowledged on the 2d, and recorded on the 6th of October. Holmes assigned the mortgage and the accompanying bond to the respondent, on the 2d of October, and received for it the full consideration of $2,000.

The defences to the foreclosure suit are: First—That the mortgage was without consideration. The mortgage was made and delivered to Holmes for the accommodation of the latter, to enable him to use it for his own purposes. It had no vitality until it was transferred by Holmes, and on its assignment by him to the respondent it acquired ample consideration for its support.

Second—That the mortgage was procured by fraud, by means of the false representations of Holmes as to his financial condition. The mortgagor, Jacobsen, testifies that Holmes, when he solicited the mortgage, represented that he was worth $50,000 after all his debts were paid. Holmes filed a petition in bankruptcy on the 19th of December,

Jacobsen v. Dodd.

1876, and was subsequently discharged as a bankrupt; but there is no evidence of his financial condition at the time the mortgage was made or assigned. It is superfluous to say that the testimony of Jacobsen, that he afterwards found out that Holmes's statements on that subject were false, is not competent evidence of the fact.

Third—That the mortgage was made for a specific purpose, and was fraudulently used by Holmes for another purpose. The testimony of Jacobsen is, that Holmes was in need of money to meet the pressing claims of creditors, and applied to him as a friend for assistance; that Holmes said that "a party was pressing him for some money; that if he had a friend who would stand by him to help him, or assist him, or go security for him, in six months he would work himself out all clear, or otherwise he would be compelled to make forced sales of his property and sacrifice on it. I told him that, as he had befriended me, I would befriend him if I could do it without any risk to myself. He said a mortgage might help him. 'Well, then,' said I, 'Mr. Holmes, I'll lend you a mortgage, if you are sure you can return it in six months, or about that time, without any injury to me.' He said he could—he knew he could." The witness further testified that the arrangement was that the mortgage was to be used by Holmes as collateral security for a debt.

Of these facts the respondent was entirely ignorant. He took an assignment of the mortgage in good faith, and paid Holmes the full amount of money mentioned in it. It is manifest that, under these circumstances, this defence is not maintained.

Independent of those cases of implied or constructive fraud which arise out of a breach of duty, trust or confidence presumed from the fiduciary relations subsisting between the parties, fraud, as a ground of relief, whether as a cause of action or a defence, consists in the conjunction of wrong and injury. Fraud without damage, or damage without fraud, gives no cause of action; but where the two

concur, an action lies.  *Baily* v. *Merrell, 3 Bulst. 94, Croke J.; Pasley* v. *Freeman, 3 T. R. 51; Upton* v. *Vail, 6 Johns. 181.* To perfect a right of action or defence for such a cause, it must appear that the false representation and the damage bear to each other the relation of cause and effect.  *Byard* v. *Holmes, 5 Vr. 296 ; Gerhard* v. *Bates, 2 El. & Bl. 476.*

The appellants gave the mortgage to Holmes, with the intent that it should be used by him for his own benefit. The parties contemplated that it should be an efficient security for the sum of money mentioned in it.  Whether it was used by Holmes as collateral. security for an existing indebtedness, or for the purpose of raising money on it, would not diminish or increase the liability of the mortgaged premises as a security, and its use for the one purpose instead of the other, did not occasion any injury to the mortgagor.  The mortgagor had no interest in any particular transaction of Holmes, for the payment of which the mortgage was intended.  He was induced to make and entrust the mortgage to Holmes solely by his desire to oblige him.  Holmes had all the benefit of the mortgage he would have had if, instead of raising the money on it, he had used it to satisfy or secure a debt, and the liability of the mortgagor was not increased by the negotiation of the mortgage to the respondent beyond what it would have been if Holmes had used it as collateral security for a debt.

The object the parties had in view—the accommodation of Holmes—was accomplished by the negotiation of the mortgage to the respondent, though it was not effected precisely in the manner the mortgagor expected.  Regarding the substance only of the transaction, the mortgagor was not defrauded by the use Holmes made of the mortgage.  He was only disappointed in the manner in which Holmes saw fit to avail himself of the advantages of the security which the mortgagor was prompted to give him solely by his desire to accommodate a friend.  A security made for the accommodation of another, on which it was understood that the money should be realized in a particular

manner, is not fraudulently misappropriated if the money is obtained in a different way from that which was intended; if its negotiation effects the substantial purpose for which it was designed, it is not material whether it was effected in the precise manner contemplated, unless the interest of the party making it is prejudiced by the manner in which it was used. *Duncan* v. *Gilbert, 5 Dutch. 521.*

The decree should be affirmed, with costs.

Decree unanimously affirmed.