SYLVESTER, HILTON & COMPANY, Appellant, v. HENRICH & TOMLINSON, *et al.*

| 93 | 489 |
|----|-----|
| 106 | 654 |
| 93 | 489 |
| 110 | 111 |
| 93 | 489 |
| 113 | 467 |
| 93 | 469 |
| 115 | 529 |
| 93 | 489 |
| 128 | 591 |
| 93 | 489 |
| 142 | 138 |

**Deceit.** A bank answering a credit inquiry, wrote that a firm was doing a good business; its members were competent; that the bank anticipated no difficulty about the firm's meeting a one thousand two hundred dollar liability; that the firm's realty was more or less mortgaged and that the bank thought "they will be able to make sales this fall and that then they will be in a strong position." At this time the firm was largely indebted to the bank; its account with the bank had been overdrawn for a year, and twenty days later, ten days after one thousand two hundred dollars worth of goods were shipped the firm by plaintiff, the firm became insolvent. Some six months before this the bank had taken chattel mortgages on the firm's stock, which were not recorded. At the time of the failure the firm sold its stock to B. and debts due the bank from the firm and its individual members were paid by turning purchase price notes made by B. over to the bank. *Held,* it is not established that the bank knew its said statements to be false or that it intended to deceive with them; and both are essential to recover in a *law* action.

SAME: ESTOPPEL. Said letter does not estop the bank from holding said purchase price notes against plaintiff's claim for said goods sold.

FAILURE TO RECORD. The bank claiming nothing under its mortgages, it will hold said notes notwithstanding its failure to record the mortgages.

PARTNERSHIP. An insolvent firm, may, against firm creditors, pay debts of a member with firm assets, all the members assenting.

*Appeal from Plymouth District Court.*—HON. F. R. GAYNOR, Judge.

FRIDAY, JANUARY 25, 1895.

Suit in equity to reach certain property in the possession of the Le Mars National Bank, W. H. Dent, and G. C. Maclagan, and subject it to the payment of a judgment held by plaintiffs against defendants Henrich

& Tomlinson (Henry Henrich and F. M. Tomlinson). From a decree dismissing plaintiff's petition, they ·appeal.—*Affirmed.*

*Park & Odell* for appellants.

*Argo, McDuffie & Reichmann* for appellees.

Deemer, J.—For some years prior to the fourth day of September, 1888, defendants Henry Henrich and F. M. Tomlinson were engaged in the retail dry goods and grocery business in the city of Le Mars, under the firm name of Henrich & Tomlinson.    Plaintiffs are a wholesale dry goods firm doing business in the city of New York.    About the month of August, 1888, Henry Henrich went to New York, and ordered a bill of goods of the plaintiffs.    He referred the plaintiffs to the defendant Le Mars National Bank for information regarding his credit, and plaintiffs wrote to the bank the following letter: "September 4, 1888. G. C. Maclagan, Cashier Le Mars National Bank, Le Mars, Iowa:    Do you consider Henrich & Tomlinson good for $1,200, four months' credit?    Please wire reply. [Signed] Sylvester, Hilton & Co."    In reply to this plaintiffs received the following telegram: "Le Mars, Iowa, Sept. 5, '88.    Sylvester, Hilton & Co., New York: Concerning Henrich & Tomlinson, writing to-day.    G. C. Maclagan, Cashier,"—followed by this letter: "Wm. H. Dent, Prest.    James Tierney, V. Prest.    G. C. Maclagan, Cashr.    Henry J. Moreton, Asst. Cashr. The Le Mars National Bank.    Le Mars, Iowa, September 5, 1888.    Mess. Sylvester, Hilton & Co.—Dear Sirs:

We received your telegram about Mess. Henrich & Tomlinson, but found it impossible to reply to your question by wire. Mess. Henrich & Tomlinson are doing a good business, and both are very competent men. We do not anticipate that there will be any difficulty in their meeting an obligation of one thousand two hundred dollars. As you are probably aware from reports, they own real estate which is more or less incumbered; but we think that they will be able to make sales this fall, and that then they will be in a strong position. Yours, truly, G. C. Maclagan, Cashier." Plaintiffs thereupon shipped the goods ordered by Henrich, amounting to about one thousand two hundred dollars. This shipment was made about September 14, 1888. On or about September 24, 1888, the defendants Henrich & Tomlinson sold out their entire business in Le Mars, except book accounts and some goods in Chicago, to one Peter Branch, for the sum of about forty-six thousand dollars, and since this time the firm of Henrich & Tomlinson, and the individual members thereof, have been insolvent. At the time of the sale, the firm and Tomlinson were indebted to the Le Mars Bank in the sum of about thirty-six thousand dollars, and the bank accepted notes of Branch in that amount, which he made for the purchase price of the stock, in liquidation of its account against the firm of Henrich & Tomlinson and Tomlinson individually. Plaintiffs' bill not being paid, they obtained judgment against Henrich & Tomlinson for the amount thereof in the District Court of Plymouth county. This suit, originally in the nature of a creditors' bill, is to obtain satisfaction of the judgment from the defendant bank. The petition is in three counts. The first alleges, in substance, that the defendant bank received the notes from Branch well knowing that the firm of Henrich & Tomlinson was

and is insolvent, and that it received them with intent
to hinder, delay, and defraud the creditors of the firm
of Henrich & Tomlinson.     The second count is really a
law action to recover damages from the bank for deceit
and false and fraudulent representations in writing the
letter above set out, in answer to plaintiffs' inquiries.
The allegations, in substance, are that the statements
contained in the letter were false, and known to be
false, at the time the bank made them; that the officers
of the bank well knew the firm of Henrich & Tomlinson
was insolvent at the time the letter was written; that
the said firm then owed the bank more than twenty-five
thousand dollars; that the letter was written for the
purpose of misleading and deceiving plaintiffs, and for
the further purpose of aiding the said defendant firm in
obtaining the goods, so as to add to and increase their
assets, in order that the bank might profit thereby; that
shortly after receiving the goods the defendant firm
sold the goods to Branch, and that the bank received a
large part of the proceeds thereof.     In the third
count the plaintiffs allege that in February,
1888, defendants, then being indebted to the
bank, executed and delivered a chattel mortgage upon
their personal property to the bank, and the bank in
consideration thereof agreed to withhold the same
from record; that the bank accepted the same with
intent of secretly withholding the same from the
records, and did withhold the same therefrom, thereby
enabling the firm of Henrich & Tomlinson to continue
business, and not impair their credit; that plaintiffs at
the time they sold the goods had no knowledge or notice
of the mortgage, and that believing in the truthfulness
of the statements made by the firm, and the represen-
tations contained in the letter of the bank, they
shipped the goods; that by reason of withholding the
mortgage from record, and of the misrepresentations

and acts of the defendant bank, the bank is estopped
from asserting any right, claim, lien, or interest in or
to the property of Henrich & Tomlinson prior to the
claim or interest of plaintiffs. The defendants' answer
was practically a general denial of each and every alle-
gation and claim of the petition. The court dismissed
the plaintiffs' petition, and they appeal.

We do not understand counsel for appellants to
contend that there is evidence in support of the first
count of the petition; so that no attention need be paid
to it further than to say that, if counsel had so claimed,
we see nothing in the record which would justify their
position. The controlling questions in the case relate
to the second and third counts. The second count,
although presenting a law action for fraud and deceit,
was introduced into this suit without objection, and we
first look to the law applicable to the issues pre-
sented. Ever since the case of *Pasley v. Free-
man*, 3 Term R. 51, decided in 1789, it has been
held that an action lies for a false recommendation as
to the credit of one person, by which another sustains
damage, if such recommendation be made with intent
to deceive and defraud such other; and the false repre-
sentation may consist in the suppression of the truth
as well as in the assertion of a falsehood; and the action
lies in either case if the intent to deceive exists, and is
the cause of the suppression of the truth or the asser-
tion of the falsehood. *Upton v. Vail*, 6 Johns. 181;
*Allen v. Addington*, 7 Wend. 9; *Addington v. Allen*, 11
Wend. 374. To maintain an action for such deceit, the
plaintiff must prove actual fraud, or an intention to
defraud him, by false representations. Deceit is the
gist of the action; and, though the advice given be rash
and indiscreet, yet, if there is no ground to infer an
intent to deceive, it will not support the action. *Avery
v. Chapman*, 62 Iowa, 145, 17 N. W. Rep. 454; *Young v.*

*Covell,* 8 Johns. 24; *Upton v. Vail, supra; Holmes v. Clark,* 10 Iowa, 423; *McKown v. Furgason,* 47 Iowa, 636; *Marsh v. Falker,* 40 N. Y. 562.

With these rules for our guide, we turn, then, to the letter written by Maclagan, the cashier of the defendant bank, of date September 5, 1888, and find that he stated therein the following matters: (1) That Henrich & Tomlinson were doing a good business, and were both very competent men; (2) that he did not anticipate there would be any difficulty in their meeting an obligation of one thousand two hundred dollars; (3) that their real estate was incumbered, but he thought they would be able to make sales in the fall, and that then they would be in a strong position. It will be noticed that the expressions in this letter are quite carefully guarded. The only affirmation of facts is that they are doing a good business, and are both competent men. All the rest is mere expression of opinion. The evidence relied upon to establish the falsity of these representations of fact shows that, at the time this letter was written, the defendant firm was indebted in the sum of about thirty thousand dollars, and that Tomlinson had an individual indebtedness of about ten thousand dollars. It also shows that, during nearly the whole of the year in which they did business with the bank, they had an overdraft with it, and owed it about twenty thousand dollars at the time the letter was written. It also shows that at the time of the sale to Branch they were wholly insolvent. The amount of their assets is not shown, except as it may be inferred from the price received from Branch. This showing may or may not establish that they were doing a good business. It is well known that many firms in a failing condition do a good business. Indeed, we find no evidence, except in a final result, which indicates the

volume of business they were doing, except the state-
ment of the bank officers that the firm was doing a very
large business, and that the firm frequently repre-
sented to the bank that they were possessed of a con-
siderable amount of property over and above their lia-
bilities, and that they were doing a successful business.
When it comes to the competency of the members of
this firm as business men, we have nothing but the
results of their enterprise from which to judge, and
these show that at the time of the sale to Branch they
were insolvent. Assuming, however, that the falsity
of both of these facts is shown, there yet remains to
be established the fact that the bank knew of the falsity
of these statements at the time it made them, and that
it made them with intent to deceive. No doubt, if the
*scienter* is established, the presumption, under all the
circumstances of the case, will arise that it made the
statement with intent to deceive and defraud. But
knowledge of the falsity of these statements on the
part of some officer of the bank must be shown, else
there is no fraud. The mere fact that the final result
of the firm's business was disastrous is not sufficient to
prove this knowledge, for it is well known that men
who are doing a good business, and are apparently com-
petent and in good credit, turn out in reality to be
insolvent. The evidence shows that the bank knew
the firm was largely indebted, and it is clear to our
minds that it thought the firm had sufficient assets to
pay all debts, and did not know to the contrary until
long after the letter of September fifth was written. As
to the opinions expressed by the bank in its letter to
plaintiffs with reference to the ability of the firm to
meet a bill of one thousand two hundred dollars, and
to its position in the event of a good fall trade, assum-
ing that such opinions may be grounds for an action of
deceit, yet here, as with reference to the statements of

facts, we think there is such a lack of evidence of bad
faith and knowledge of the falsity of the opinions as is
fatal to plaintiffs' recovery.    We are cited to a large
number of authorities by plaintiffs' counsel to the
effect that it is not necessary in a suit in equity to prove
the *scienter*, and that equity will grant relief on the
ground of fraud, although the party representing a
material fact made the assertion without knowledge
whether it was true or not.    Concede the rule to be as
stated, as it no doubt is, and yet we do not see its appli-
cability to this case.    The action here is at law to
recover damages for the fraud and deceit, and, under
the authorities in this state before cited, *scienter* must
be proved.    Courts of law and equity have concurrent
jurisdiction of fraud.    But when the party aggrieved
chooses his forum he is bound by the rules of law appli-
cable to his case in the form of action adopted.

II.    The first count in the petition seems to
embrace two propositions: First, that certain mort-
gages executed by the firm of Henrich & Tomlinson to
the bank were fraudulent, because withheld from the
records by agreement between the parties; and, second,
an estoppel growing out of the transactions between
the parties, which bars the defendant bank from claim-
ing any part of the proceeds arising from the sale of the
goods to Branch.    The record discloses that during
nearly, if not quite, all of the time the firm was dealing
with the bank, the bank held chattel mortgages upon
the stock carried by the firm, and upon the real estate of
the individual members thereof, and that these mort-
gages were withheld from the records of the county
where the firm did business.    It does not appear,
however, that they were withheld from record
by agreement of the parties; and there is no
other circumstance tending to show fraud in the exe-
cution of these instruments.    If it did appear that these

mortgages were withheld from the records by agreement, still this would not of itself give plaintiffs a right of recovery.   Defendant bank does not claim anything under these mortgages.   Its claim is that it discounted the notes given by Branch for the purchase price of the stock, and, by agreement between it and Henrich & Tomlinson, applied the proceeds upon notes it held against them.   There is nothing in the record to indicate that the mortgages had any bearing upon the transaction in question.   Had the defendant made any claim under these mortgages, plaintiffs might then attack them as fraudulent, if they had furnished the necessary proof of an agreement to withhold them from record.   But as defendant is making no claim thereunder, and has at no time asked anything on account thereof, it is difficult to see what these mortgages have to do with the case.   The claim of estoppel has even narrower foundation on which to rest.   The mortgages before referred to have nothing, as we think, to do with the claim made in the third count in the petition.   Were the defendant bank claiming some right thereunder, it may be true that it would be estopped by reason of statements made in the letter of September fifth from claiming thereunder.   The claim of estoppel, then, must rest upon some statement or representation in the letter of September fifth upon which plaintiffs relied and acted, and which the defendant bank is now denying or attempting to deny in this case.   A re-examination of the letter in the light of this proposition leads us to believe that there is no statement therein inconsistent with defendant's present claim to the money it received from the proceeds of the sale to Branch.   The firm of Henrich & Tomlinson may have been doing a good business, and may have been composed of competent men at the time the letter in question was written, and defendant's

present claim is not in contradiction of these state-
ments. The bank may not on September 5, 1888, have
anticipated any difficulty in the firm's meeting an obli-
gation of one thousand two hundred dollars, and yet,
with perfect consistency, insist upon the claim now
made by it to the money received from the sale of the
stock. So with reference to the last clause of the letter;
there is no statement there which the bank in this case
is attempting to deny. It is true the bank made no
statement in this letter regarding the mortgage it held
against the firm of Henrich & Tomlinson, but, as we
have said, it is not now insisting upon these mortgages.
Likewise is it true that the bank did not state to
plaintiffs that the firm was largely indebted to it. But
it will be noticed in referring to the letter, that the bank
did not attempt to give any statement of the assets and
liabilities of the firm. The letter seems to be
carefully guarded in this respect. The most that
can be claimed for it in this respect is that the
bank gave it as its opinion that there would be no diffi-
culty in the firm's meeting an obligation of one thou-
sand two hundred dollars; and, as we have already
seen, the bank cannot be held responsible therefor,
unless it be shown that the opinion was given in bad
faith. There is no statement in the letter which estops
the defendant bank from claiming the money arising
from the sale of the stock, on the claims it held against
Henrich & Tomlinson.

III. Lastly, it is insisted that with the proceeds
of the sale of the stock it (the bank) liquidated certain
individual liabilities of defendant Tomlinson to it, to
the prejudice of the rights of firm creditors. We
doubt much whether this apparent individual
liability of defendant Tomlinson was not a lia-
bility of the firm to the bank. But assuming, for the
purpose of the case, that it was an individual liability

of Tomlinson, yet it clearly appears that both members of the firm agreed to the liquidation of the indebtedness in the manner it was done, and, this being true, the firm creditors have no cause of complaint. This subject underwent thorough consideration in the recent case of *Smith v. Smith*, 87 Iowa, 93, 54 N. W. Rep. 73, and the rule we have announced was clearly established. We think the court was right in dismissing the plaintiffs' petition, and the decree is *affirmed*.