CLEMENT, BANE & CO. v. SWANSON & EMANUELSON *et al.,*
Defendants, WILSON BROS., ISAAC LESEM & CO..
DENZER. GOODHART & CO., TOWNSEND, GRACE
& CO., Intervenors and Appellants.

**False Representations as to Credit:** INTENT TO DECEIVE: *Evidence.* A creditor, who agreed to establish credit for its debtors, in response to inquiries, made answers as to their capital invested, which it believed to be true, but which were, in fact, false. The answers as well as the inquiries were silent as to the debtor's indebtedness, and the answers did not disclose a condition of the credit agreement requiring the debtors to send weekly remittances to the creditor for all sales, and to pay all bills with checks on such fund. *Held,* that a finding to the effect that the answers were made without intent to deceive was warranted.

INTENT TO DECEIVE. In the absence of contract, a liability for damages resulting from misleading answers to inquiries as to the credit of a firm does not attach, unless made with intent to deceive.

**Failure to Record:** WHEN IMMATERIAL: *Credit agreement.* A credit agreement provided that debtors should invest a certain sum in their business, pay interest on past due accounts, keep their stock insured, and send their creditor weekly reports and remittances

for all sales, and pay all bills by checks on such fund; that they should do substantially a cash business, and use only a specified sum for expenses, and make no change in business without the creditors consent. The contract was to continue for a term of years but gave the creditor the right to wind up the business if it proved unsuccessful. *Held* that, since the contract created no lien on their stock, the failure to record it did not render their subsequent mortgage on the stock in favor of the creditor fraudulant as to the other creditors who did not know of the agreement.

PRACTICE: *Proof of scienter*. The fact that a claim for damages resulting from misrepresentations as to the credit of a firm is injected by a petition of intervention into an action in equity does not change the rule regarding proof of scienter.

*Appeal from Wapello District Court.*—HON. M. A. ROBERTS, Judge.

SATURDAY, DECEMBER 16, 1899.

SWANSON & EMANUELSON began business in the Hub Clothing Store, at Ottumwa, Iowa, April 3, 1895, having procured credit through the execution of a contract with Clement, Bane & Co., March 14th previous. A mortgage to the latter was given May, 23, 1896, covering their entire stock in trade, purporting to secure the payment of ten thousand dollars; and this action to foreclose it was begun July 15th following, and three days later a receiver was appointed, who realized from said stock, after the payment of all expenses, the sum of seven thousand three hundred dollars. Other mortgages were subsequently given, and certain creditors, having reduced their claims to judgments, filed petitions of intervention, asking that these be first paid from the fund in the hands of the receiver. This relief was denied, and interveners Denzer, Goodhart & Co., Townsend, Grace & Co., Isaac Lesem & Co., and Wilson Bros., appeal.— *Affirmed.*

*W. S. Coen* and *Work & Lewis* for appellants.

*Geo. F. Heindel* and *W. L. Crissman* for appellee.

LADD, J.—In order to obtain credit, the defendants, Swanson & Emanuelson, entered into a contract with Clement, Bane & Co., March 14, 1895, by the terms of which they agreed. (1) to invest in the business one thousand dollars each, and to borrow another one thousand dollars from Hallberg, the payment of which should be deferred till the debt to plaintiff was satisfied; (2) to pay interest on all credits after the maturity of bills; (3) to keep the stock insured in favor of plaintiff, who was to hold the policies; (4) that all moneys above expenses received during the previous week, accompanied by a detailed report of business transacted, be sent to plaintiff every Monday, and payment for all goods bought of others be made by checks on Clement, Bane & Co.; (5) to do a substantially cash business, and to withdraw not to exceed sixty-five dollars per month each for personal expenses, and make no important change in the business without the consent of the plaintiff; (6) to buy no clothing of any other house; and (7) to take an inventory each year, and thereupon render the plaintiff a full and complete statement, showing the exact condition of the business. On the other hand, Clement, Bane & Co. agreed to furnish them, as needed, a stock of clothing from their Chicago house, on a basis of four months' time, at prices given their best customers, to render a statement every four months, and "to establish a credit for the said party of the second part with such firms as deal in furnishing goods and hats and caps, so that said party of the second part may be enabled to purchase such lines of goods on advantageous terms." The contract was to continue three years, but, in event the business proved to be unsuccessful the first year, the plaintiff might, at its option, take such measures as it might deem best to wind up defendant's affairs. We have stated only the substance of the agreement, but enough to show that,

in so far as binding on the defendants, it related exclusively to the manner of carrying on their business. The enumeration of the conditions of the contract suffices to show that the creation of any lien whatever on the property was cautiously avoided. The exactions required before the extension of credit, were designed to furnish Clement, Bane & Co. the utmost security, short of retaining an interest in or lien on the stock. The concessions of Swanson & Emanuelson do not encroach on their freedom in carrying on their enterprise locally, nor limit their control of the stock in trade. No lien whatever was created, nor was any remedy given that the law, in its absence, did not provide. It is needless to add that the recording of such an instrument is not contemplated by the statutes of this state. Recording has for its purpose imparting notice of the transfer or creation of a lien on property. This contract did neither. See *Randolph v. Allen,* 19 C. C. A. 353 (73 Fed. Rep. 23). Were it to be construed otherwise, however, still no agreement to withhold from the record was established, and in this action the plaintiff is not relying upon the contract, but a subsequent mortgage. *Letts, Fletcher & Co. v. McMaster,* 83 Iowa, 454; *Mull v. Dooley,* 89 Iowa, 316; *Lemert v. McKibben,* 91 Iowa, 350.

II. It will be observed that Clement, Bane & Co. undertook to establish a credit for Swanson & Emanuelson with dealers in furnishing goods and hats and caps. This, according to usage among wholesale dealers, meant that plaintiff would enable that firm to buy goods on time. The appellants, by direction of Swanson & Emanuelson, applied to Clement, Bane & Co. for information relating to their financial standing, and received responses on which they relied in extending credit. The answers to these inquiries, summarized, were that the firm had invested capital to the amount of three thousand dollars, was doing a nice business, with prospects good, was paying bills promptly, and, plaintiff believed, would pay

for all goods bought, and its members were said to be men
of wide acquaintance and excellent reputation. Except as
to the amount invested, none of these statements is ques-
tioned by the record. No inquiry was made concerning
the indebtedness of the firm, and on that matter the plain-
tiff remained silent. But the creditors, knowing the sums
recently invested, and the character of the business and
extent of the stock, could not have been misled into under-
estimating the amount the firm owed. Nor do we think
the omission to disclose the condition of the contract
virtually making Clement, Bane & Co. their banker, by
remitting to that firm all moneys above expenses, and pay-
ing creditors with checks on them, material. Prior to the
execution of the mortgage, all such checks were honored;
and, so far as shown, this method of payment did not have
the slightest effect on the financial standing of the firm,—
no more than an agreement to keep their account at a par-
ticular bank would have had. The matter of the capital
invested remains. That Clement, Bane & Co. believed the
statements made to be true, we have no doubt. That they
were in fact false is equally free from doubt. Swanson
borrowed his portion of the alleged capital from his father,
and Emanuelson obtained his in the same way in Illinois.
But they represented this in the contract to be of their own
means, and such was the tenor of their correspondence and
conversation. There was nothing to apprise the plaintiff to
the contrary. The money loaned by Hallberg was, to all
intents and purposes, a part of the capital,—put in at the
risk of the business, as it could not be withdrawn until
plaintiff was fully paid. Even if he might claim priority
as against other creditors, it is to be said that he has not
done so. The court was warranted in concluding that the
answers to inquiries stated directly or inferentially all the
plaintiff knew, or might reasonably be expected to have
known.

III.   In the absence of a contract, the plaintiff in voluntarily responding to the inquiries of creditors, was only bound to act in good faith; and liability for damages resulting from misleading them did not attach, unless its answers were made with intent to deceive.   *Sylvester v. Henrich,* 93 Iowa, 493.   It is insisted that, as this action is in equity, proof of scienter is not essential.

We shall not determine whether these claims have any place in a suit to foreclose a mortgage, as the parties seem content to have the issues there litigated. But the mere fact that such an action for damages is injected by petition of intervention into an action in equity will not change the rule with reference to the quantum of proof required.   That question was settled in *Hubbard v. Weare,* 79 Iowa, 685; and, rejecting dicta, none of the authorities cited by appellant are in conflict with the rule there announced.   Was the plaintiff liable because of the contract?   As has been seen, for a valuable consideration, Clement, Bane & Co. agreed to establish a credit for Swanson & Emanuelson with dealers in furnishing goods, hats, and caps.   But this was for the benefit of that firm, and not their creditors, who knew nothing of its existence, and must have treated the information given as gratuitous. It was such as to them.   The agreement amounted to no more then employment of the plaintiff to do what Swanson & Emanuelson might have done.   Honest methods must be presumed to have been intended, and the agent owed no duty to the third party, other than that of fair dealing.   The agent would only be liable because of fraud practiced, or some malfeasance.   In any state of the case, then, as the plaintiff acted in entire good faith, recovery cannot be had.

IV.   Was the mortgage executed by Swanson & Emanuelson to plaintiff fraudulent?   The evidence of the mortgagors tends to answer this question in the affirmative, while that of the agent receiving the mortgage for the plaintiff is to the contrary, and is somewhat confirmed by attending

circumstances.    A careful reading of the record has left us
in doubt as to the purpose of the mortgagors, but convinced
us that the plaintiff acted solely for its own protection.
Every case of this kind must rest on its own facts, and no
useful purpose will be subserved in reviewing the evidence.
Besides, some weight ought to be given to the .conclusion of
the trial judge, 'who had the advantage of having many of
the witnesses before him.—AFFIRMED.

GRANGER, J., not sitting.