RICHARDS & COMSTOCK, Appellant, v. HENRY E. FREDRICKSON et al., Appellees.

**PRINCIPAL AND AGENT: Evidence of Relationship—Sufficiency.**
1  Evidence reviewed and held sufficient to show, in an action for damages for misrepresentations in the sale of land, that the

party making the misrepresentations was the agent of the one owning and selling the land.

**FRAUD: Fraudulent Representations—Action for Damages— 2 Scienter—Necessity to Show—How Shown.** A demand, either in law or equity, for *damages* by reason of alleged fraudulent representations must be supported by evidence establishing (a) that the representations were *false* to the actual knowledge of the one asserting them to be true *or* (b) that the representations were *false* and, with the intent to deceive, were recklessly asserted to be true without knowledge whether they were true or false, *or* (c) that the representations were *false* and were made under any other condition which would be the equivalent of *scienter.* Evidence reviewed in an action for damages for false representations in a sale of lands and held to establish the *scienter.*

**FRAUD: Damages, Measure of—False Representations as to Non- 3 existing Land.** One who, in falsely representing the existence of land, pointed out what he claimed to be such land and estimated its value cannot object that the court, in assessing damages, adopted his estimate of the value, especially where there was other evidence that such estimate would have been correct had the land existed.

**VENDOR AND PURCHASER: Vendee's Action for Possession— 4 Costs and Attorney Fees—Vendor's Liability.** A vendor of land is not liable for court costs and attorney fees expended by the vendee in an unsuccessful action to remove from the premises one who claimed to be the tenant of vendor, the vendor having no notice of such action or opportunity to participate therein.

*Appeal from Pottawattamie District Court.*—HON. O. D. WHEELER, Judge.

WEDNESDAY, JUNE 23, 1915.

REHEARING DENIED MONDAY, OCTOBER 4, 1915.

IN a suit to foreclose a mortgage, the defendant pleaded a counterclaim, and a balance, after cancelling the mortgage, was allowed thereon, and judgment entered accordingly. Plaintiff appeals.—*Modified* and *Remanded.*

*Stout, Rose & Wells,* and *Tinley, Mitchell & Pryor,* for appellant.

*Saunders & Stuart, I. J. Dunn, George S. Wright, Lysle I. Abbott, A. W. Askwith,* for appellees.

LADD, J.—On November 30, 1911, the defendant, H. E. Fredrickson, made a written proposition to Richards & Comstock, a corporation, to exchange seventeen new and used automobiles, at prices aggregating $22,300, for "444 acres of land and accretion lands adjoining said 444 acres and belonging to it," described as "East 2/3 of Lot 1, and all of Lot 2 in Section 5, and all of Lots 3 and 4, in Section 4, all in Township 75, Range 44, Pottawattamie County, Iowa," and as the difference in value, to "give back a mortgage on said deeded land to the amount of $11,000 to run five years at 6% interest," and "to receive Richards & Comstock's share of 1911 crops." On this was endorsed: "The above proposition is hereby accepted and we hereby deposit $1.00 earnest money as required in this contract. (Signed) Richards & Comstock, By J. De F. Richards. Witness: S. S. Montgomery."

The exchange was consummated in pursuance of this agreement by the delivery of the automobiles to Montgomery and execution of a warranty deed by Richards & Comstock of the 444 acres of land to Fredrickson, and a quitclaim deed to him of the accreted lands, and a mortgage in accordance with the terms by Fredrickson to Richards & Comstock. As the defendant failed to pay the interest on the mortgage at maturity, the plaintiff elected to declare the entire indebtedness due and instituted this suit praying that it be foreclosed. The defendant pleaded a counterclaim, in which he alleged that the plaintiff, through its agents, falsely and knowingly misrepresented that in the tract of land conveyed there were 444 acres of deeded land, and at least 750 acres in the entire tract, including the accreted lands; that there were in fact but 434.18 acres altogether, and that defendant made the exchange in reliance thereon and was deceived to his damage in the sum of $11,500. In the second count, damages were claimed owing to the failure to obtain possession until one year later than agreed, and the expense of litigation in obtaining possession. The exchange was made on the plaintiff's

part through one Montgomery, and the evidence leaves no doubt that he, by himself and through one Linn, represented that there were 750 acres of land in all,—that is, more than 300 acres of accreted land; that this was untrue and must have been known by them to·be untrue; and that defendant relied thereon and was induced thereby to make the exchange for the land, when, had he known the truth, he would not have done so.

I. It is contended by appellant, however, that Montgomery was not authorized to act as agent of the plaintiff in what he did, and that plaintiff did not know that the representations were false. The deal was negotiated by Montgomery ostensibly in behalf of Richards & Comstock, and the contract for exchange was made in their name.

1. PRINCIPAL AND AGENT: evidence of relationship: sufficiency.

Their signature was attached thereto by De Forest Richards, who, as Comstock testified, was their agent. Montgomery testified: "I had been handling this land for Richards & Comstock for at least two years previous to this and had the renting of it. Received verbal authority from both Richards and Comstock to represent Richards & Comstock, and received such shortly after they acquired the land." Though Comstock denied that Montgomery had authority other than for specified acts, he admitted "that probably every month for the last year I had some wildcat thing put up to me about it by him"; and testified that, about November 29, 1911, he received a dispatch from Montgomery making an offer of $4,000 cash and a mortgage of $11,000 on the land, bearing interest at the rate of 5%; that he objected that the rate of interest was too low; that Montgomery responded by fixing the rate at 6%; that he wrote Montgomery inquiring who was making the proposition and his responsibility; that he answered that he was taking a lot of automobiles and was to pay the money or have somebody do so for him; and that thereafter he requested a warranty deed of the deeded land and a special deed for the accretion; that he sent the deeds

and form of mortgage covering both for execution. As Fredrickson would not accept the last mentioned deed without some indication of the amount of accreted land conveyed thereby, Montgomery telegraphed Comstock: "Deal acceptable except they want added the following on quitclaim deed: 'Three hundred acres more or less.' This means nothing. There are more acres than this of accretion land. Shall I tell them that you will add this clause in the deed? Answer." Comstock responded: "Must have Stout's advice," and mailed a copy of Montgomery's telegram to Stout (his attorney), with this added: "I do not know how many acres of accretion land there is. Probably more than three hundred but I do not like to assert this with my indefinite information. If you say it is all right, however, of course I will do so. Kindly advise me."

Comstock testified that in accepting the proposition he was not aware of whose it was, that he knew nothing of the automobiles and supposed it was a cash transaction and that he wrote to Richards to go ahead and close the deal. Thereafter, Fredrickson and Montgomery went to Stout's office, and after some parley, there was inserted in the deed, following the phrase, "not the land itself, only the accretions," the words, "being three hundred acres more or less," and the deal was closed. From this it clearly appears that Comstock was fully aware that Montgomery was exchanging the land to Fredrickson, and was put on inquiry as to the representations made that the latter was giving the mortgage back and that Richards & Comstock were receiving the $4,000 from Montgomery in lieu of automobiles. Moreover, Richards, through whom the papers were turned over, was fully informed that Montgomery was representing himself as their agent, and all of them knew that he was representing that there were 300 acres of accretions.

As Richards, conceded to have been plaintiff's agent, knew that the representations had been made by Montgomery,

though not personally knowing the facts, and that the exchange was induced thereby, it is not so material whether Montgomery was authorized to act as agent or not. That issue is fairly presented, however, and we are not inclined to interfere with the finding of the district court that he was so authorized.

II. Although the case was heard in equity, the demands in the counterclaim are for damages. In other words, the defendant, with knowledge of the facts, confirmed the exchange and elected to recoup in damages for any injury in consequence of the deceit practiced on him, and in such a case, *scienter* or its equivalent must be proven. *Sylvester v. Henrich,* 93 Iowa 489; *Clement v. Swanson,* 110 Iowa 106; *Boddy v. Henry,* 113 Iowa 462; *Hubbard v. Weare,* 79 Iowa 678.

2. FRAUD: fraudulent representations: action for damages: *scienter:* necessity to show: how shown.

Appellant insists that there is no evidence from which it might be inferred that plaintiff knew that there were no accretions to the land other than the 444 acres of what was called deeded land. The record discloses that Montgomery pretended to point out to Fredrickson the alleged accretions (being a part of the 444 acres) and the boundaries of the farm, and especially the line between the accretions and the original lots. Fredrickson testified that he then represented that there were at least 300 or 350 acres of accretion and pointed out where these lay. Abbott, an attorney who had examined the abstract for the defendant, swore that at a meeting in his office, Montgomery, as well as Linn, positively represented that there were between 300 and 500 acres of accreted land, Linn putting the figures much higher. Tooser also testified to hearing the conversation in Abbott's office and other conversations at defendant's store, wherein Montgomery stated that there were 750 acres in the land. Montgomery denied making the representations and insisted that he told Fredrickson that he did not know how much

there was and testified that he in fact did not. De Forest Richards, who is conceded to have been acting for plaintiff, testified that he did not know the acreage, but thought Linn did. After Montgomery had showed the land to defendant, he referred him to Linn. The latter was equal to the occasion, as he stated there were fully 800 acres in the farm, that he had lived near by several years, had had it surveyed and knew where the stakes were. As there were but 434.18 acres, less than the deeded land as represented, and conditions had not materially changed for many years, and he was familiar with the premises, he must have been aware of the falsity of his statements. Indeed, the unanimity with which all concerned in the transaction referred to Linn raises the suspicion that this may have been by design. Enough of the record, however, has been recited to indicate that all knew of the representations' having been made, and Montgomery, the agent of plaintiff, of their absolute falsity. Others, as Richards & Comstock, though they may have been without knowledge thereof, were willing to proceed with the deal and avail themselves of its advantages, notwithstanding their knowledge of the representations, and their want of knowledge that there were accretions as represented. Appellant concedes that, if Montgomery was the agent of plaintiff in effecting the exchange, the latter was chargeable with his knowledge of the falsity of the representations made. If it be conceded, as Montgomery insists, that he did not know that there were any accretions to the land, it might well have been found that he recklessly stated that as true of which he had no knowledge, and so did for the purpose of deceiving and defrauding the defendant; and under these circumstances, as was held in *Davis v. Central Land Co.,* 162 Iowa 269, the plaintiff would be liable for the damages suffered in consequence of the deception practiced.

III. The court assessed, as part of the damages, $12,000 for the 300 acres of land represented to be, but not included,

in the tract conveyed. The evidence, of course, could not well show the character of this land, but Montgomery pointed out what he claimed to be such land, and the plaintiff had the right to understand that the land would be of the character pointed out to him. In computing the value, Montgomery had estimated the 444 acres at $75 per acre, and had said that there were fully 350 acres of accretion lands, and that that would figure out between $35 and $40 per acre for the entire tract. Necessarily, there is no evidence as to any difference in the land, and as plaintiff's agent had made this estimate and had pointed out a part of the deeded land as accretions, the court rightly assumed that the representation was that lands of about the character pointed out would be conveyed, and, therefore, that it would be worth the price estimated,—that is, $35 or $40 per acre.

*3. FRAUD: damages, measure of: false representations as to non-existing land.*

Moreover, witness Mayne testified that there was "no real difference between the accreted land and the land that you call in place," for the reason that they were in the same condition, and that it was difficult to distinguish between them. If the agent had not pointed out the land to be conveyed, it would be a different case, as there probably is much difference in different accreted lands. Having pointed out the land, however, and it being shown by the last mentioned witness that "all of this land that has vegetation upon it is worth about $40 per acre," the plaintiff is in no situation to complain if the estimate of the agent of $35 or $40 per acre shall be accepted.

Under the rule laid down in *Stoke v. Converse*, 153 Iowa 274, the measure of damages is the difference in the value of the property as it was and as it would have been if as represented. Here the land had no existence, but was represented to be as pointed out by Montgomery, and would be the reasonable market value of the land as so pointed out. We are of opinion that defendant should be allowed the lowest estimated value per acre for 300 acres, or $10,500 as damages.

Under the terms of the exchange, the defendant was to have possession of the land March 1, 1912. One Lewis had been tenant and claimed to have leased the premises from Montgomery as agent of plaintiff for another year, and refused to yield possession. Thereupon, the defendant instituted an action of forcible entry and detainer in the justice court, and upon trial, Lewis was removed from all but 70 acres of land and defendant put in possession. On appeal to the district court, the action was again tried and reversed, the costs, amounting to $66.15, being taxed against the defendant. The court included in its judgment these costs, and also an attorney fee of $75, on the theory that there had been a breach of warranty, and the defendant was entitled to recover the costs and attorney's fee expended in procuring possession. For some reason, or because of neglect, Montgomery was not procured as a witness, and it is suggested that the result of the suit was owing to this omission. No notice of the pendency of the action was served on the plaintiff, and it had no opportunity to procure possession for Fredrickson nor to participate in said action in any way. This being so, and the issue being doubtful, we are not inclined to hold that recovery may be had of the expenses of litigation. *Yokum v. Thomas*, 15 Iowa 67; *Swartz v. Burton*, 47 Iowa 188; *Meservey v. Snell*, 94 Iowa 222; *Alexander v. Staley*, 110 Iowa 607.

4. VENDOR AND
PURCHASER:
vendee's action for possession: costs
and attorney
fees: vendor's
liability.

The decree will be modified so as to exclude the costs and attorney's fees, and the damages reduced to $10,500, and the cause will be remanded for that purpose. Each party will pay one half of the costs of this court.—*Modified and Remanded.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.