GEORGE A. STOKE, Appellant, v. F. W. CONVERSE, MACK GROVES, GEORGE GROVES, W. H. HODGE, and M. M. HECK, Appellees.

**Fraudulent conveyances:** MEASURE OF DAMAGES. In an action for damages based on a misrepresentation of the value of property sold, the measure of damage is the difference between the market value of the property as it actually was and the value it was represented to have, unaffected by the market value of other property which was to be exchanged in payment therefor; it being immaterial whether the injured party was to pay for the same in cash or in property.

*Appeal from Emmet District Court.*—HON. D. F. COYLE, Judge.

WEDNESDAY, DECEMBER 13, 1911.

ACTION for damages because of alleged misrepresentation and guaranty of invoice value of goods resulted in a verdict for defendants, and from judgment thereon the plaintiff appeals.—*Reversed.*

*Sullivan & McMahon* and *E. A. Morling,* for appellant.

*N. J. Lee* and *J. G. Myerly,* for appellees.

LADD, J.—The plaintiff owned three hundred and twenty acres of land in Redwood county, Minn., subject to a mortgage of $6,000 on which there was interest accrued amounting to $300. One Hodge had acquired by trade a stock of goods, caused it to be moved to Estherville, and a bill of sale thereof deposited with the defendant,

Converse, as security of an indebtedness of Hodge to the bank of which Converse was cashier. An exchange of this stock of goods was made for the land subject to the incumbrance, and plaintiff says that he was induced so to do by the representation of Converse that there were from $6,700 to $7,000 worth of goods in the stock as shown by the invoice and bills, whereas the value of said goods did not exceed $1,200; that such representation was false, and so known to be, and was made to deceive the plaintiff. The defense was a general denial. An issue of whether the value of the goods was guaranteed also was tried. At the close of the evidence the petition was dismissed as to all defendants other than Converse, and with respect to the measure of damages on the issue of fraud the court instructed the jury that:

The first claim of plaintiff, as submitted to you in the foregoing instructions, is a claim for damages for false and fraudulent representations. If you find for plaintiff on this issue, you will allow him as damages the difference between the reasonable market value of the stock and fixtures, as the stock and fixtures actually were at the time of the exchange, and the reasonable market value of the stock and fixtures as that value would have been if the stock and fixtures had been as represented, provided the reasonable market value of the land exchanged over and above the mortgage and interest was equal to or greater than the same. But if the reasonable market value of the land over and above the mortgage and interest was less than the reasonable market value of the stock and fixtures as that value would have been if the stock and fixtures had been as represented, you should allow plaintiff, if you find for him, the difference between the reasonable market value of the stock and fixtures as the stock and fixtures actually were, and the reasonable market value of the land over and above the mortgage and interest at the time of the exchange.

An exception thereto was taken, and it is contended that the measure of damages as stated is erroneous because

of the qualification limiting the market value of the stock of goods and fixtures as represented by the market value of the land exchanged. In other words, appellant contends that the true measure of damages is the difference between the market value of the stock of goods and fixtures as they were and as they were represented to be. In the early case of *Likes v. Baer,* 8 Iowa, 368, the rule was laid down as last stated. The plaintiff exchanged land in Clark county to defendant for other land in Ringgold county, and in the suit claimed that defendant had falsely represented the quality of his land. The court approved an instruction authorizing the allowance of damages "equal to the difference between the actual value of the land and what it would have been worth had it answered the description given of it by the defendant." A rehearing was granted; but in an opinion which seems to have been supplemental to that first filed, found in 10 Iowa, 89, wherein the ruling on the admissibility of evidence was changed, Wright, C. J., observed that "in other respects there is no error." Had the opinion in 8 Iowa, 368, been withdrawn, it likely would not have appeared in the official reports, for the granting of a rehearing has the effect to withdraw the opinion previously filed, and it then is of no force or authority, unless subsequently adopted by the court. Moreover, the portion of this opinion confirming the measure of damages as stated by the trial court often has been cited with approval. See *Gates v. Reynolds,* 13 Iowa, 1, involving an exchange of lands, wherein the court instructed similarly to the charge in the case at bar, and in which this court, after observing its appropriateness in event of rescission, held the measure of damages should have been stated as in the *Likes* case. *Moberly v. Alexander,* 19 Iowa, 162; *Stewart v. Jack,* 78 Iowa, 154; *Douglas v. Moses,* 89 Iowa, 40, where it is said the measure of damages laid down in *Likes v. Baer* has been the law of Iowa

for forty years; *Short v. Matteson,* 81 Iowa, 638; *Callanan v. Brown,* 31 Iowa, 333.

In *High v. Kistner,* 44 Iowa, 79, it is said that testimony of the value of property received was not admissible for the purpose of fixing the measure of damages, and this was quoted with apparent approval in *Vaupel v. Mulhall,* 141 Iowa, 365. In *Jay v. Bitzer,* 77 Iowa, 73, it was said that the measure of damages is the same in cases of breaches of warranty and fraud. In *Boddy v. Henry,* 113 Iowa, 462, an exchange of land for stock in a company owning Texas lands, we said that the proper rule for the measure of damages "would be to find out how much less the value of the stock was than it would have been if the representations had been true." Again, in *Howerton v. Augustine,* 130 Iowa, 389, is to be found language of similar import.

*Howes v. Axtell,* 74 Iowa, 400, has been cited as announcing a contrary doctrine; but an instruction was approved therein which said to the jury: "The rule of law is this: To ascertain the difference in the value of land as it was represented to be and its value as it really was, and that difference is the plaintiff's damages." See, also, *White v. Smith,* 54 Iowa, 233; *Hahn v. Cummings,* 3 Iowa, 583. An expression may be found in *Mattauch v. Walsh,* 136 Iowa, 225, intimating the rule to be as laid down by the trial court; but, as the question there involved was whether there was sufficient evidence to carry the case to the jury, what was said concerning the measure of damages must be regarded as *obiter.* In *Robbins v. Selby,* 144 Iowa, 407, the measure of damages as applied by the trial court was not questioned, and all said was that the evidence sustained the findings as made. In *Fagan v. Hook,* 134 Iowa, 381, the contract was rescinded, and, as universally held, the measure of damages applied was the difference between values of the properties transferred. It is to be said, however, that *Mattauch v. Walsh*

and *Robbins v. Selby,* furnished some ground for thinking that the earlier decisions of this court may have become unsatisfactory, and for this reason we may advert to the conflict of authorities elsewhere. In one class of cases, the measure of damages in actions for deceit is held to be the difference between the actual value of the property at the time of the purchase and its value if the property had been what it was represented to be, and in the other the difference between the real value of the property and the value of what was given for it. The grounds for the latter view are tersely expressed by Chief Justice Fuller in *Smith v. Bolles,* 132 U. S. 125 (10 Sup. Ct. 39, 33 L. Ed. 279):

The measure of damages was not the difference between the contract price and the reasonable market value if the property had been as represented to be, even if the stock had been worth the price paid for it; nor, if the stock were worthless, could the plaintiff have recovered the value it would have had if the property had been equal to the representations. What the plaintiff might have gained is not the question, but what he had lost by being deceived into the purchase. The suit was not brought for breach of contract. The gist of the action was that plaintiff was fraudulently induced by the defendant to purchase stock upon the faith of certain false and fraudulent representations, and so as to the other persons on whose claims the plaintiff sought to recover. If the jury believed from the evidence that the defendant was guilty of the fraudulent and false representations alleged, and that the purchase of stock had been made in reliance thereon, then the defendant was liable to respond in such damages as naturally and proximately resulted from the fraud. He was bound to make good the loss sustained, such as the moneys the plaintiff had paid out, and interest, and any other outlay legitimately attributable to defendant's fraudulent conduct; but this liability did not include the expected fruits of an unrealized speculation.

Like reasons were given in *Sigafus v. Porter,* 179 U. S. 116 (21 Sup. Ct. 34, 45 L. Ed. 133), in reversing the

Circuit Court of Appeals, 84 Fed. 430 (28 C. C. A. 443).
And this rule has been approved in several states and
obtains in England. *Stickney v. Jordan,* 47 Minn. 262
(49 N. W. 980). See 20 Cyc. 135, for collection of cases.

But the overwhelming weight of authority in this
country approves the allowance, as the measure of damages,
of the difference between the actual value of the property at
the time of the purchase and its value if it had been what
it was represented to be. In *Morse v. Hutchins,* 102 Mass,
440, in so holding the court observed that: "This is the
only rule which will give the purchaser adequate damages
for not having the thing which the defendant undertook
to sell him. To allow to the plaintiff  .  .  .  only the
difference between the real value of the property and the
price which he was induced to pay for it would be to
make any advantage lawfully secured to the innocent pur-
chaser in the original bargain inure to the benefit of the
wrongdoer; and, in proportion as the original price was
low, would afford a protection to the party who had broken
at the expense of the party who was ready to abide by the
terms of the contract."

The reasons for the rule are more fully stated in
*Krumm v. Beach,* 96 N. Y. 398:

The contention of the appellants is that the defrauded
vendee had but one remedy, and that consisted of a rescis-
sion of the contract, and a recovery back of the considera-
tion paid, after an offer to reconvey and a tender of what.
had been received. Doubtless this remedy existed; but
the vendee was not compelled to adopt it. He had a right,
instead of rescinding the contract, to stand upon it, and
require of the vendor its complete performance, or such
damages as would be the equivalent of that complete per-
formance. The vendee, acting honestly on his own part,
was entitled to the full fruit of his bargain, and could not
be deprived of it without his consent by the fraud of the
vendor. That such an action, proceeding upon an affirm-
ance of the contract as actually made, founded upon actual
fraud, and asking damages in the room of an impossible

specific performance, can be maintained at law, has been sufficiently adjudged. *Wardell v. Fosdick,* 13 Johns. (N. Y.) 325 (7 Am. Dec. 383); *Culver v. Avery,* 7 Wend. (N. Y.) 386 (22 Am. Dec. 586); *Whitney v. Allaire,* 1 N. Y. 305; *Clark v. Baird,* 9 N. Y. 187; *Graves v. Spier,* 58 Barb. (N. Y.) 385. And that is so whether the representations relate to the title or to matters collateral to the land. The measure of damages in such a case is full indemnity to the injured party—the entire amount of his loss occasioned by the fraud. *Dimmick v. Lockwood,* 10 Wend. (N. Y.) 155; *Wardell v. Fosdick* and *Whitney v. Allaire, supra.* The first of these cases plainly points out the difference between actions for a breach of covenant and those founded upon fraud. In the former the damages are always bounded by the consideration and interest, which often fall short of full indemnity—a rule said to be founded upon considerations of public policy, without reference to the actual damage sustained by the party (*Whitney v. Allaire, supra*); but, where fraud is established, full and complete indemnity is awarded; that full indemnity may go beyond the consideration paid. The purchaser of land, as of other property, has a right to make a good bargain, if he can, provided only that he deals honestly. Often the price secured above the price paid is the sole motive for the purchase; and, where there is an exchange of lands to some extent, one dealing fairly may sell his own at a high price, and secure another's at a low one. To the entire benefit of his bargain he is entitled. If there had been no fraud, he would have had it. He should not lose it because the other party had been dishonest. The measure of damages, therefore, should be that adopted by the court below, the difference in value between the property conveyed and that which would have been conveyed had the property been as represented, and the actual contract honestly fulfilled.

In *Gustafson v. Rustemeyer,* 70 Conn. 125 (39 Atl. 104, 39 L. R. A. 644, 66 Am. St. Rep. 92), the authorities are reviewed *pro* and *con* with the conclusion adhering to the rule as last stated. A like conclusion was reached, after reviewing the authorities, in *Howe v. Martin,* 23 Okl. 561 (102 Pac. 128, 138 Am. St. Rep. 840). See, also,

*Boyce v. Gingrich,* 154 Mo. App. 198 (134 S. W. 79);
*McCrary v. Pritchard,* 119 Ga. 876 (47 S. E. 341), and
*Hecht v. Metzler,* 14 Utah, 408 (48 Pac. 37, 60 Am. St.
Rep. 906), and cases collected in 20 Cyc. 133.   In 4
Sutherland on Damages, section 1171, the author says the
party guilty of the fraud "is to make good his representa-
tions as though he had given a warranty to that effect;"
and further on:   "The general rule as above stated is based
on the assumption that the amount is the measure. of value
as fixed by the parties; but a purchaser does not buy to
sell again at the same price, and to compel him arbitrarily
to accept compensation by that standard is to deprive him
of such benefit. of his purchase as the state of the market
would have enabled him to realize if there had been no
fraud."   It is said, in Bigelow on Frauds, 627, that, in
actions for deceit or breach of warranty in sales of per-
sonalty or realty, the rule as last stated is well settled.

It can make no difference whether the innocent party
pay in money or in property.   In either event he is en-
titled to the price he fixed and the other party undertook
to pay, and ought not to be compelled to accept a lower
price because of another's fraud, and thereby allow the
wrongdoer a bargain he could not have obtained by fair
dealing.   Otherwise the wrongdoer may speculate on the
outcome of his fraudulent enterprise without possibility of
loss, for, under the rule as stated in the instruction quoted,
in no event would he be liable for more than the value
received by him.   But if compelled to make good his rep-
resentations, he is not paying the innocent party a specu-
lative price, but that which he represented him to be get-
ting, and for which such innocent party parted with the
consideration paid.   We discover no reason to depart from
the rule as laid down in *Likes v. Baer,* 8 Iowa, 368, and
followed since, i. e., that the measure of damages for de-
ceit is the difference between the market value of the prop-
erty as it really was at the time of the purchase and the

market value thereof as it would have been if as represented.

There is nothing in the suggestion that plaintiff tried the case on another theory. Though recitals of value are to be found in the petition, the measure of damages claimed was not mentioned, and, in calling witnesses to testify as to value of the farm exchanged for the stock of goods, counsel for plaintiff suggested that the evidence was in rebuttal, but that he wished to examine the witnesses. then, as they wished to go home, and at the same time said, "Our theory is that the proper measure of damages is the difference between the stock as represented and its actual value." After the witnesses had been examined, a colloquy occurred between court and counsel in which the latter repeated his contention that the measure of damages would be the difference in the values of the stock of goods as it was and as it would have been if as represented, and the court suggested that, though such were the rule, if cash were paid, where properties were exchanged, the difference between the values of such properties would be the measure of damage. Surely nothing said was calculated to mislead the court, nor was it to be inferred from the calling of the witnesses that the measure of damages claimed was that suggested by the court. Nor was it to be inferred from nothing more being said during the trial and the failure to request an instruction that counsel acquiesced in the suggestion. He had the right to rely on the court if the jury were to be instructed to state the law correctly. We reach the conclusion that the court erred in giving the instruction set out, and that such error was not induced by anything done by appellant.

Other errors assigned likely will not arise on another trial.—*Reversed.*