MOORE et ux. v. BEAKLEY. (No. 5596.) *

(Court of Civil Appeals of Texas. San Antonio. Feb. 2, 1916. On Motion for Rehearing, Feb. 23, 1916.)

1. FRAUD ⬥59—FALSE REPRESENTATIONS— DAMAGES—EVIDENCE.

In an action for damages for false representations as to the value of bonds delivered to plaintiff on the exchange of realty, where the only evidence as to the value of bonds was the amount agreed upon by the parties at the time of the exchange and their value some months thereafter, no damages for decrease in value could be allowed, the value at a subsequent date not being a proper measure of damages.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 60–62, 64; Dec. Dig. ⬥59.]

2. FRAUD ⬥50—PRESUMPTIONS.

In the absence of any evidence to the contrary, it must be presumed that the parties put the true value on the property they exchanged.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47; Dec. Dig. ⬥50.]

3. FRAUD ⬥59—DAMAGES.

The measure of damages, where bonds given for the difference on an exchange of land were not of the value represented, is the difference between the estimated market value of the bonds, based on the representations made, and the true market value at the time of their delivery.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 60–62, 64; Dec. Dig. ⬥59.]

4. FRAUD ⬥50—EVIDENCE—DAMAGES.

No damages can be allowed where the true value of bonds given on an exchange of realty at the time of the exchange is not shown, but the suit was based on the fact that the bonds thereafter depreciated in value.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47; Dec. Dig. ⬥50.]

5. FRAUD ⬥59—NOMINAL DAMAGES—EVIDENCE.

In an action to recover for misrepresentations in the exchange of bonds for real estate, where the plaintiff failed to show misrepresentations as to the value of the bonds at the time or before the exchange, no nominal damages could be awarded, there being no violation of his rights, though other facts than value were misrepresented.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 60–62, 64; Dec. Dig. ⬥59.]

6. FRAUD ⬥56—EVIDENCE.

In an action for damages for alleged misrepresentations in the exchange of land for bonds, testimony of the plaintiff that he relied on the fact that the bonds were issued by a Baptist university and purported to be secured by a first mortgage was immaterial.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 53; Dec. Dig. ⬥56.]

On Motion for Rehearing.

7. FRAUD ⬥22—MISREPRESENTATIONS—OPPORTUNITY TO INVESTIGATE.

A court of equity will not set aside a contract or grant damages on the ground of fraudu-

lent misrepresentations when, after the misrepresentations were made the party defrauded was given sufficient opportunity to investigate and learn the real facts, so that where the defendant offered the plaintiff 30 days to look into bonds taken by him in exchange for real estate and plaintiff refused to investigate, he cannot recover damages.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 19–23; Dec. Dig. ⊚═22.]

Error from District Court, Bexar County; S. G. Tayloe, Judge.

Action by W. C. Moore and wife against S. S. Beakley. Judgment on directed verdict for defendant, and plaintiffs bring error. Affirmed.

W. W. King, of San Antonio, for plaintiffs in error. Boyle & Storey and West & McMillan, all of San Antonio, for defendant in error.

FLY, C. J. Plaintiffs in error sued defendant in error to recover damages in the sum of $1,300, alleging that plaintiffs and defendant had exchanged certain parcels of land, and plaintiff's land being more valuable than that of defendant he gave promissory notes and 13 bonds, the face value of which was $1,300, but which were alleged to be of no value; that they were purported to be first mortgage bonds of the Texas Baptist University and secured by a lien on its property. Fraud was alleged upon the part of defendant as follows:

"That at the time the contract was made for the exchange of said properties, and at the time the deeds were executed in pursuance thereto, and at the time the said bonds were delivered to plaintiff, the defendant and his duly authorized agent represented to plaintiff that the same were first mortgage bonds of the Texas Baptist University; that is said bonds were secured by a first lien upon the property of said university, that said bonds were the only debts owing by said university and its property was worth the sum of one hundred and fifty thousand dollars ($150,000).

"That the representations made as aforesaid were believed by plaintiffs to be true when made and they were ignorant of their falsity, and they acted upon said representations and received said bonds at their par value, believing them to be a first lien upon the property of said university, and that the property of said university given as security for the payment of said bonds was amply sufficient in value to secure their payment. That the representations so made by defendant and his agent to plaintiffs were made for the purpose of inducing plaintiff to act thereon, and plaintiffs would not have acted thereon but for said representations.

"That said representations made as aforesaid were wholly false in this: That at the time of the issuance of the bonds by the Texas Baptist University, of which the said 13 bonds above described form a part, and at the time of the execution of the mortgage or deed of trust given by said university to secure the same, and at the time of the sale of the 13 bonds to plaintiffs, the property of said University was then incumbered by prior vendor's liens executed by the Texas Baptist University for eighteen thousand dollars ($18,000) and interest, held by R. W. Sears, and eleven thousand eight hundred and twenty-four dollars and eighty-three cents ($11,824.83) held by C. C. Huffines et al., retained in a deed executed by the Patton Seminary & Conservatory of Music to the Texas Baptist University dated on the 9th day of March, 1905, and another deed executed by J. G. Etheridge to the Texas Baptist University on the 4th day of April, 1905. And the value of all of the property of said university then less than the said bonded debt.

"That the said prior liens as aforesaid were, at the time of the sale of the bonds by defendant to plaintiffs, greatly in excess of the value of the property belonging to said university, whereby the said bonds were then and are now worthless, and that these plaintiffs failed to discover the existence of said prior liens or that said representations so made were false, until on or about the 2d day of August, 1911."

The court after hearing the evidence instructed a verdict for defendant.

The evidence shows that R. H. Howard was the agent of plaintiffs to sell or exchange certain real estate owned by them, and in the prosecution of his agency he succeeded in obtaining from defendant an agreement to make a certain exchange, whereby he was to receive properties known as numbers 713 and 717 in the city of San Antonio, on the west side of Howard street, between Park avenue and Evergreen street, of the estimated value of $10,000, and was to give therefor $1,700 in cash, to convey to plaintiffs two certain lots of the estimated value of $2,000, to deliver to plaintiffs 13 bonds issued by the Texas Baptist University of Dallas, Tex., and to execute to plaintiffs 5 vendor's lien notes in the sum of $1,000 each. Plaintiffs were to pay a certain indebtedness on the two lots of $1,500. The trade was consummated as indicated, the necessary deeds and notes were executed, and the 13 bonds delivered to plaintiffs. It was recited in the bonds that they belonged to a series of similar bonds numbered from 100 to 400, inclusive, amounting in the aggregate to $40,000, secured by a mortgage or deed of trust on all the property, real and personal, owned by the Texas Baptist University, and on each of the bonds was the following indorsement: "The Texas Baptist University First Mortgage Bond," with dates, etc. The trade was closed on September 19, 1910, and appellants did not discover the bonds until June, 1911. There was a superior lien to that evidenced by the mortgage to secure the bonds made to secure the sum of $18,000, and there were other liens paramount to the lien for the bonds. The property was sold to pay those claims and nothing remained. The bonds at the time of the trial were worthless, but what their value was in September, when they were delivered to plaintiffs, is not shown by the evidence. The first interest due on the bonds after appellants obtained them was paid to them. No conversation took place between plaintiffs and defendant preliminary to the trade. The only statement made by defendant as to the bonds was to R. H. Howard, and as written by the latter and given plaintiffs was:

"Bonds—7 years to run, issued to Texas Baptist Institute at Dallas for improvements $40,000, which is all that is owed, and the property is worth $150,000, as stated by the Surety &

Trust Company of Dallas—6%, payable semiannually."

Defendant told R. H. Howard and he told Moore when he gave him the statement that he could take 30 days and investigate as to the truth of it. Moore made no investigation but stated that he was satisfied if the Baptist Church backed the bonds, and on their face they showed they were first mortgage bonds, and he made no investigation. There were no representations made when the contract was signed, when the deeds were executed, or when the bonds were delivered, as is alleged in the petition. There is no evidence tending to show that the bonds were not worth $1,300 when they were delivered to plaintiffs. It was months after the bonds had been delivered to plaintiffs that the property of the Texas Baptist University was placed in the hands of a receiver.

[1, 2] The testimony showed that it was agreed between the parties when the exchange was made that the bonds were worth $1,300, and plaintiffs insist that "if the parties agreed upon the value at the time the conveyances were made, this may be deemed its true value," as was held in the case of White v. Street, 67 Tex. 177, 2 S. W. 529. That is the only proof as to the value of the bonds at time of trade that was made, and upon that proof, if proof it be, plaintiffs failed to show that they sustained any damages whatever. The only evidence as to the value of the bonds was the value months after the exchange, and that could not be used as a measure of damages. The bonds were not worthless when the exchange was made because afterwards they produced interest which was collected by plaintiffs. In the absence of any evidence to the contrary it must be presumed that the parties put the true value on the property that they exchanged.

[3, 4] Stripped of all technicalities, the true measure of damages in this case would be the difference in the estimated market value of the bonds, based on the representations of defendant, and the true market value at the time the bonds were delivered to plaintiffs. Under that common sense measure the proof fails to disclose any way to calculate the damages. The same result is reached if we apply the rule, invoked by plaintiffs, laid down in George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, which, in cases of exchange of property, states the measure of damages to be "the difference between the value of that which he has parted with, and the value of that which he has received under the agreement." The value of nothing exchanged in this transaction is questioned, except the value of the bonds; therefore nothing need be taken into consideration, except the represented value and the actual value of the bonds at the time the exchange was executed. No value was shown by plaintiffs at that time, and the agreed value must be

taken as the true value, and consequently there was no basis for the suit.

[5] If there was no misrepresentation as to the value of the bonds at the time or before the exchange was consummated, there could be no basis for nominal damages, because there was no invasion or violation of any legal right of plaintiffs, and this suit was not necessary for the vindication of a right nor to redress a wrong deserving compensation. In the testimony there is no basis for damages, substantial or nominal, and the court could not do otherwise than instruct a verdict for defendant. It would not matter that the bonds were not secured by a first mortgage, nor that the property of the Texas Baptist University was not worth $150,000, nor that it owed more than $40,000, if the bonds were worth $1,300 when the exchange took place, no case was made out. At that time the university may have been perfectly solvent. A day may change the condition of a man or corporation from one of solvency to one of insolvency. This is well known to every one acquainted with the moving pictures of modern business life.

[6] The evidence of W. C. Moore, complained of in the fifth assignment of error, in view of the facts, is utterly immaterial, and the assignment is overruled. The same can be said of the second and third assignments of error.

The evidence of Moore tended to show that he relied on the fact that the bonds were issued by a Baptist institution, and that the bonds purported to be secured by a first mortgage.

The judgment is affirmed.

### On Motion for Rehearing.

It is strenuously, if not logically, insisted that the opinion in this case is in positive and direct conflict with the opinions in the case of George v. Hesse, the one by this court being found in 94 S. W. 1124, and that by the Supreme Court in 100 Tex. 46, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456. In that case it was proved, as in the other cases cited by the plaintiffs, that the defendants had been guilty of fraudulent and false representations, and that plaintiffs in trading relied on such representations. In this case it was not proved that defendant, as alleged by plaintiffs, made false representations "when the contract was signed," or "when the deeds were executed," or "when the bonds were delivered," and plaintiff W. C. Moore reiterated that he relied alone on the fact that a Baptist church was back of the bonds and that they were first mortgage bonds. In the George-Hesse Case, the representations made the land appear more valuable than it really was, but in this case it is not pretended that the bonds were not worth all they were sold for at the time of the trade. It is admitted that at that time they were worth their face value. It is the conten

tion, however, because the bonds afterwards became worthless, defendant must refund the money that plaintiffs paid for them. There can be no justice in such a proposition.

[7] The uncontroverted testimony showed that defendant requested W. C. Moore to investigate as to the bonds and gave him the name of a trust company which would give him information. Moore was acquainted in Dallas and could, in less than a week's time, have obtained a full report as to the financial condition of the Baptist College. He was given 30 days in which to make the investigation, but he was satisfied because the Baptist institution had issued the bonds. A court of equity will not set aside a contract or grant other relief on the ground of misrepresentations, "when, after the representation, the party receiving it has given to him a sufficient opportunity of examining into the real facts, when his attention is directed to the sources of information, and he commences, or purports or professes to commence, an investigation. The plainest motives of expediency and of justice require that he should be charged with all knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness. He cannot claim that he did not learn the truth, and that he was misled." Pomeroy, Eq. Jur. § 893. No effort was made by the defendant to conceal the facts from W. C. Moore, but he was invited to investigate and ample time given for the investigation. There was no fiduciary relation existing between the parties. They had never met and did not meet until they executed the exchange of the property. The evidence tends to show that plaintiffs did not rely on the fact that the bonds were secured by a first mortgage for in the statement given by Howard there was no mention of the mortgage, and it would seem that plaintiffs never saw the bonds until they were delivered at the time the exchange was consummated. He had agreed to take the bonds before he ever saw them or knew that they purported to be first mortgage bonds.

We have seen no opinion holding that in order to ascertain the loss the value of the property, about which the representation was made, should be taken 6 months, a year, or 5 years after the exchange was made. It must be the value at the time the trade was made. In order to ascertain the loss the injury should be confined to the time of the trade. If the bonds were worth $1,300 when they were delivered to plaintiffs, as they admit they were, defendant cannot be held to have guaranteed they would never decrease in value.

The rule laid down by this court as to damages is in full harmony with that enunciated by this court in George v. Hesse. In that case the measure of damages was fixed by the difference between the price paid for the land and what it was really worth. In the case of Merrill v. Taylor, 72 Tex. 295,

10 S. W. 532, the same rule was enunciated.

In the case of Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279, relied on very confidently by plaintiffs, the court holds identically as does this court. The Supreme Court said:

"What the plaintiff paid for the stock was properly put in evidence, not as the basis of the application of the rule in relation to the difference between the contract price and the market or actual value, but as establishing the loss he had sustained in that particular. If the stock had a value in fact, that would necessarily be applied in reduction of the damages."

That is what this court holds and has held, and it is not only founded on common sense, but on the principles of justice. Plaintiffs state that this court must indulge in the presumption that the value agreed on by the parties was the true value, and, such being the case, plaintiffs fail to show that they sustained any damage. If the bonds were worth $1,300 when the trade was made, it is a matter of no moment, so far as this case is concerned, what they may have been worth long afterwards.

Again, in the case of Sigafus v. Porter, 179 U. S. 125, 21 Sup. Ct. 37, 45 L. Ed. 113, the court held:

"Upon the assumption that the property was not worth what the plaintiffs agreed to give for it, they were entitled to have—if the evidence sustained the allegation of false and fraudulent representations upon which they were entitled to rely and upon which they in fact relied—a verdict and judgment representing in damages the difference between the real value of the property at the date of its sale to the plaintiffs and the price paid for it, with interest from that date, and, in addition, such outlays as were legitimately attributable to the defendant's conduct, but not damages covering 'the expected fruits of an unrealized speculation.' If plaintiffs were inveigled by the fraud of the defendant into purchasing this mining property, a judgment of the character just indicated would make them whole on account of the loss they sustained."

That is the just rule, it is the Texas rule, and we have followed it in this case.

Plaintiffs misapprehend the case of Dargan v. Ellis, 81 Tex. 194, 16 S. W. 789, as they have the other cases on the subject for that case totally fails to sustain their view of this case. That case merely reiterates and applies the doctrine that in the absence of proof as to the value of the property at the time of the exchange, the agreed value will be taken as the true value. So we hold in this case, and under that ruling plaintiffs have failed to make out a case, because they received all they contracted for.

There is no merit, as stated in our former opinion, in the contention that plaintiffs are entitled to nominal damages. Plaintiffs failed to make out a case, and under the rule followed in Texas and federal courts there is no basis for nominal damages. In a Minnesota case, in which the same measure of damages is laid down as the one laid down by this court, the Supreme Court of that state held:

"The plaintiff, under such a rule, would not be permitted to recover nominal damages even

without proof of loss or injury. * * * Damage is of the essence of the action of deceit; an essential element to the right of action, and not merely a consequence flowing from it." Alden v. Wright, 47 Minn. 225, 49 N. W. 767.

According to the old maxim:

"Fraud without damage or damage without fraud, gives no cause of action."

The question as to the measure of damages in cases of exchange of properties, when fraud is shown, is fully discussed in the Iowa case of Stoke v. Converse, 153 Iowa, 274, 133 N. W. 709, 38 L. R. A. 465, Ann. Cas. 1913E, 270, and in the notes appended are several cases like the one under consideration in which nominal damages were denied.

We would not have deemed it necessary to have written anything further on the issues involved, had it not been that, in a very long and strenuous motion for rehearing, it is with impassionate emphasis asserted that this court had overruled all cases and precedents in its former opinion, and we deemed it appropriate, if not necessary, to show that this court is not only in accord with the Texas cases, but with those of the United States and other states. The former opinion was written after a full consideration of the subject, and we think the measure of damages followed by this court is plain enough, and so just that it should appeal to the intelligence of every one.

The motion for rehearing is overruled.