J. W. DAVIS, Appellant, v. FRANK W. WALKER et al., Appellees.

**FRAUD:** Scienter as Necessary Element. One who seeks damages for 1 fraud which induced a contract must establish *scienter* or its equivalent. He so shows when he establishes that he was the victim of a material, false statement of fact, which plaintiff *knew* was false; because the law thereupon creates a presumption of fraudulent purpose.

**FRAUD:** Statements of Value. A positive representation of value, 2 made for the purpose of inducing a contract, is a material statement of fact, and if knowingly false, constitutes actionable fraud.

**FRAUD:** Negligence in Believing Falsehood. One who has deliberately 3 and intentionally deceived another, with fraudulent intent, may not assert that the victim was too credulous.

**FRAUD:** Estoppel to Question Measure of Damages. One who has, by 4 false representations, induced the purchase of a farm may not complain that the defrauded party claims as damages the difference between the actual value of the farm and what he paid therefor, instead of the difference between the actual value of the farm and the value which it would have had, had it been as represented,— it appearing that the latter measure would have exceeded the former.

*Appeal from Jasper District Court.—*D. W. HAMILTON, Judge.

JULY 14, 1921.

SUPPLEMENTAL OPINION ON REHEARING SEPTEMBER 30, 1921.

SUIT to foreclose a mortgage. Defendant pleaded a counter-claim for damages, based on false representations claimed to have been made by plaintiff in the exchange of lands, the land received by defendant in the exchange being the land on which the mortgage sought to be foreclosed was given. A balance after canceling the mortgage was allowed on counterclaim, and judgment entered accordingly. Plaintiff appeals.—*Modified and affirmed.*

*Preston & Dillinger* and *E. M. S. McLaughlin,* for appellant.

*W. R. Cooper, E. J. Salmon,* and *McCoy & McCoy,* for appellees.

ARTHUR, J.—On November 23, 1917, J. W. Davis, plaintiff, appellant, and Frank W. Walker, defendant, appellee, entered into a written contract for the exchange of farms, whereby the plaintiff agreed to and afterwards did convey to the defendant 281 acres of land, situated in Jasper County, Iowa, the defendant assuming a mortgage for $7,500 resting on the land, and executing a second mortgage on the land to Davis for $21,500. The defendant agreed to and did afterwards convey to Davis 320 acres of land situated in Wilkin County, Minnesota, Davis assuming the mortgage of $7,500 existing on the land. Defendant defaulted in the payment of interest installments payable on September 1, 1918; and, on January 24, 1919, plaintiff instituted this action against defendant upon the notes, and for foreclosure of the $21,500 mortgage.

1. FRAUD: *scienter* as necessary element.

Defendant answered, admitting the execution of the notes and mortgage, and pleaded counterclaim, praying that the notes and mortgage sued on be canceled, and demanding damages against the plaintiff for false representations. The matters of fraud claimed by defendant are, in substance:

(1)  That the plaintiff fraudulently and falsely represented to the defendant that he personally knew the cash value of the Jasper County farm in controversy, and that it was actually worth, on November 23, 1917, $175 per acre.

(2) That said land was not subject to overflow.

(3) That said land had been subject to overflow but once in the previous six years, but that this did not prevent the producing of good crops thereon for that season.

(4) That the plaintiff had raised crops on said land of full and average yield during each of said six years.

(5) That a drainage district had legally been established which included said farm, and that such improvement would be completed within the near future.

To entitle defendant to recover, it was incumbent upon him to establish that one or more of the representations were made by plaintiff, as alleged; that such representations were false; that plaintiff knew that such representations were false when he made them, or that he made said representations, assuming and asserting that he had personal knowledge thereof; that they were made for the purpose of inducing the defendant to make the trade; that the defendant relied upon the representations, and was thereby induced to make the exchange of properties.

The court made findings of fact, finding that the plaintiff, J. W. Davis, made false representations as to the value of the Jasper County land on November 23, 1917, and as to the quality of the land, its productiveness, and the amount capable of cultivation, substantially as pleaded by defendant in his answer and counterclaim and claimed by him in his evidence; that the statements or representations were not made by the plaintiff as mere expressions of opinion, but were made as positive statements of fact, for the purpose of having them acted upon as true; that the defendant believed the false representations to be true, and relied upon them, and in such belief and reliance was induced to exchange farms with the plaintiff. The court further found that the Jasper County farm was worth $80 an acre on November 23, 1917, instead of $175 an acre, as represented by plaintiff. The court canceled the $21,500 mortgage on the Jasper County land, given by defendant to plaintiff, and found that the defendant made a case entitling him to relief in damages in the sum of $23,885, less the notes in suit, secured by mortgage in the amount of $21,500, leaving due from plaintiff $2,385, and interest thereon at 6 per cent to the date of judgment in the sum of $278, making a total of $2,663; and that, the

plaintiff having paid interest on the first mortgage on the Jasper County farm, amounting to $818, he was entitled to a credit for said sum, leaving a net balance of $1,845 due the defendant Frank Walker on his counterclaim, for which he was entitled to judgment against the plaintiff. From the decree canceling the $21,500 mortgage, and from the judgment against plaintiff on defendant's counterclaim, this appeal is taken.

'  Although the case was heard in equity, the demand in the counterclaim is for damages. The defendant confirmed the exchange of properties, and elected to recoup in damages for injury which he claims in consequence of the false representations which he claims were made to him by plaintiff, to induce him to make the exchange of properties. In such a case, *scienter* or its equivalent must be proven. *Richards v. Fredrickson,* 171 Iowa 669.

There is a wide divergence in the theories of counsel as to the character of the transaction, and, therefore, how the case should be considered and the law applied. There can be but little dispute as to the law applicable to the case, when a correct theory of the case is arrived at.

We have carefully examined the record. We have also examined the transcript of the evidence. There is conflict in the evidence on material points, which we always find in such cases. Plaintiff left no material charge of fraud or untoward fact undenied, or without plausible explanation. His case was handled by his counsel with consummate skill. We are constrained to believe that the plaintiff overreached the defendant by subtle and effective fraud. Davis was a shrewd, resourceful man, a dealer and trader in lands of large experience. He had owned the Jasper County land for several years, and knew all about it. Walker was a farmer, with limited business experience and without experience in land dealing. He was totally unacquainted with the Jasper County land, and ignorant of its value and character, and Davis knew that. We think the record abundantly shows that Davis, through Nelson, and by his own talk with Walker, gained the confidence of Walker, so that Walker believed his statements to be true, concerning the land and its value, and implicitly relied upon them.

We are convinced, from the evidence and the facts and cir-

cumstances surrounding the transaction shown in the record, that Davis made representations as to the kind and quality of the Jasper County land, its productiveness, and freedom from overflow, and also as to the establishing of a drainage system which would include the land, substantially as claimed by Walker; and that such representations were false, and known by Davis to be false, at the time he made them. We also find that it was proved that Davis said to Walker that he knew the value of the land, and made the positive statement of fact for the purpose of having it acted upon as true, that the land was of the actual value of $175 an acre. Walker, ignorant of the value, believed the several statements made to him by Davis concerning the land and the value of the land, and relied upon such statements, and because of such belief and reliance was induced to exchange farms. Davis cannot be heard to say that he did not know that such statements were false, at the time he asserted them. *Haigh v. White Way Laundry Co.*, 164 Iowa 143; *Richards v. Fredrickson*, 171 Iowa 669.

Making due allowance for conflict in the testimony as to the values of the Jasper County farm and the Minnesota farm, and all other questions in dispute, it stands out in bold relief in the record that Walker received not one cent in value for his Minnesota farm of 320 acres, whatever interest he had in it; and we think it is shown by the evidence to have been worth approximately $75 per acre, in which the defendant had an interest worth, above the incumbrance, about $16,500. Of course, the mere fact that Walker got the worst of the deal and lost his farm would not entitle him to relief. We must determine whether the representations claimed by defendant to have been made by plaintiff were in fact made, and their legal effect, and whether there existed also the other essential elements necessary to make out actionable fraud. Counsel for plaintiff argue ably and plausibly that the transaction involved was simply an exchange of farms, wherein both parties placed upon their farms inflated values, for the purpose of trade and exchange; that neither plaintiff nor defendant attempted nor intended to put on actual values; that there was no fraud committed; and that plaintiff did not make the representations attributed to him by the defendant as to the value and character of the Jasper

County land.   Counsel for plaintiff strenuously argue that the representation as to the value of the Jasper County farm was merely an expression of opinion, on which the defendant had no right to rely, and did not amount to fraud.   We cannot agree with the theory of plaintiff's counsel as to mutual placing of inflated and trading values upon the two farms.   Defendant priced his farm at from $70 to $75 per acre, and we think the evidence establishes that his farm was fairly and reasonably worth that amount; that that was a fair and reasonable market value of his farm; and that he did not inflate the value of it, at least to any considerable extent.   On the other hand, we are convinced, from the testimony and the facts and circumstances surrounding the transaction, that Davis positively stated to Walker, before the contract was entered into, that he knew the value of his Jasper County farm, and that its actual value was $175 per acre.   We are strongly convinced that Davis made this positive statement to Walker as to the value of his land, and that Walker believed and relied upon such statement.   In making such statement of value, which he knew to be false, the law imputes to him a fraudulent purpose.   *Davis v. Central Land Co.,* 162 Iowa 269.

While a representation as to value is ordinarily a matter of opinion, as contended by plaintiff's counsel and borne out by the authorities cited, yet, if it is put forward as an assertion of fact, as we are constrained to find it was in the instant case, and with the purpose that it shall be so received, and it is so received, and is relied on, as it was by defendant in this case, as an inducement to the contract, it is a statement of fact, and amounts to actual fraud.   In the instant case, we are convinced that Davis assumed to have special and actual knowledge of the value of his property, and stated the value as a fact, and that Walker was ignorant of the value, and that Davis knew that Walker trusted entirely to his good faith and judgment as to the value; and that, under such circumstances, such representation of value being stated as a basis of the contract between them, it must be regarded as a representation of a material fact.   We are convinced, from a careful examination of the record, that Walker was ignorant of the value of the Jasper County land, and

2. FRAUD: statements of value.

that Davis knew this, and also knew that the defendant was relying upon his representation as to value, and that such representation so made as a statement of fact, which statement Davis knew to be untrue, amounted to an affirmation of fact, rendering the plaintiff liable therefor. Under such circumstances as the instant case presents, the false statement by Davis of the value of the property, upon which he intended Walker to rely, and to be thereby induced to make the trade, became a material representation, and such representation, being believed by Walker and acted upon, justifies Walker in recovering damages sustained. Supporting, see *Van Vliet Fletcher Auto. Co. v. Crowell,* 171 Iowa 64; *Mattauch v. Walsh Bros.,* 136 Iowa 225; *Hetland v. Bilstad,* 140 Iowa 411; *Scott v. Burnight,* 131 Iowa 507; *Hess v. McCardell,* 182 Iowa 1121; *Lister v. La Plant,* 183 Iowa 1363; *Ross v. Bolte,* 165 Iowa 449.

In *Mattauch v. Walsh Bros.,* supra, we said:

"Counsel have discussed somewhat the question as to whether a statement of value may be regarded as an assertion of fact, or should be treated as the expression of opinion merely. This must necessarily depend on the circumstances of each case, and usually upon the intention of the party making the statement. Here, the evidence in behalf of plaintiff clearly indicated the intention of Walsh that his assertion of the value of the land should be acted upon as true, and not merely as his estimate; and if so, and it was knowingly false and induced an exchange by plaintiff to her damage, it was actionable."

It must be borne in mind also that Davis, according to the testimony of Walker, re-enforced his statement as to the value of his land by telling Walker that he had paid $140 an acre for it, some years before. Davis denied this statement in a modified way. He admitted that he told Walker he paid $125 an acre for it. The record shows conclusively that he paid only $82 an acre for the land. We have held that false representations as to the cost of property are statements of fact entitling recovery, if relied on to one's injury. *Dorr v. Cory,* 108 Iowa 725; *Holmes v. Rivers,* 145 Iowa 702.

The transaction in controversy seems to have been initiated by Myers, a real estate broker, of Barnsville, Minnesota, who told Walker that he knew a man in Minneapolis with a farm

east of Des Moines which he would exchange for Walker's Minnesota farm. Myers said he would have a man come out and look at it. Three or four days later, he brought one Chris Nelson out. It appears that Nelson was a real estate agent, one of Davis's acquaintances, with whom Davis had had some dealing. When Nelson came to Walker's farm, he told Walker that he and Davis owned this Jasper County farm together, and that he wanted to get his money out of the Iowa farm, and wanted Walker's land for his share. He told Walker that he owned a one-half interest in the Jasper County farm, and said that the farm was a very productive farm for corn—was rich land; that his partner, Davis, had always fed cattle on this farm; and that it was a very rich, productive farm. Nelson arranged a meeting with Davis at Des Moines, and brought Walker with him. From Des Moines, Davis, Nelson, Myers, and Walker went to Newton by train, and from there 12 miles out to the Davis farm by auto. Nelson is accredited as the agent of Davis. He was a good decoy. On the way down from Minnesota, Nelson sought to allay any suspicion that Walker might have when he came in sight of the Davis farm, regarding the overflow of the Skunk River. He told Walker that it was not the Skunk River that ran through the farm, but was just a small branch; that it never overflowed very often, and when it did, it never hurt anything. Nelson was present at the trial of the case, but was not called as a witness, to deny any of the statements attributed to him by Walker. Walker testified that Davis represented to him about the same as Nelson had: that it was only a branch of the Skunk River that ran through the farm, and not the main channel of the river, and that it very seldom overflowed; that it had only overflowed once since he had had the farm—six years. On the contrary, it appears conclusively from the record that the main channel of the Skunk River runs the entire length of the farm, and that about 200 acres of the land is located on either side of the Skunk River in the bottom, and is overflowed by the river's coming out of its banks, a number of witnesses say, as many as ten times a year. Witnesses who have been well acquainted with the land for many years testified that only one crop has been raised on it in 38 years, and that on only a small portion of it. We think the lower court placed the value of the land fully high enough

at $80 an acre, under the record. Land that has raised only one crop on a small portion of it in 38 years is not very valuable, especially when it further appears that it is not fit for meadow, and is very poor pasture because of the frequent overflow.

Witnesses called by defendant, who were acquainted with the land many years, and owned land in the vicinity, placed the value of the land at from $40 to $50 an acre. Two real estate men, produced by Davis as witnesses, placed the value of the land at $100 an acre. The trial court found the land to be worth $80 an acre, which we think was a high value—even beyond what the evidence shows the land was worth.

We are warranted in finding from the record that Davis represented to Walker that a drainage district had been established which included this land. It appears from the record that no drainage district was ever established. One had been petitioned for and had been abandoned three years before this time.

It is insisted by appellant that it was a necessary element in defendant's case that he prove that he had exercised ordinary care and diligence to ascertain the character and value of the land and to protect himself from misrepresentations made, if they were made, and that defendant did not establish by the evidence that he exercised such care and diligence for his protection. It is true that Walker was on the farm before he made the trade, and went over it to some extent. He was over but a small portion of the farm, as Davis said they would have to make the train. Walker testified that he suggested going across the river, and that Davis said, "Everything is just the same, and you can rely on what I tell you;" and that, by reason of such statements made by Davis, he did not make further investigation. When Walker looked at the farm, it was in November, and a very dry season, and Walker said he did not see any indication that there had been an overflow; that there were no ponds on the low land; that the stream which Nelson and Davis had told him was not the Skunk River, but only a branch of it, was nearly dry. The rule as to the duty of inspection is substantially as contended for by appellant, with some modification, as laid down in the recent case of *Sutton v. Greiner,* 177 Iowa 532, in cases of this character. In the *Sutton* case, complaint was made that the jury was not

3. FRAUD: negligence in believing falsehood.

instructed that it must appear that the party. alleging misrepresentation "was free from any negligence in relying thereon." We said:

"It is to be conceded that authorities substantially to this effect may be found, but it is equally true that the rule, as broadly stated by counsel, is now generally repudiated by the courts. We have repeatedly refused to recognize it in cases of this character. The more reasonable and just rule is that, as between the parties to a contract obtained by fraud and deceit, the party making a representation for the purpose of inducing another to act will not be heard to say that his false statement ought not to have been believed."

We think appellee was not guilty of negligence that would defeat his recovery.

After a careful examination of the record, we come to the conclusion that appellant, J. W. Davis, made false representations as to the Jasper County land, substantially as claimed by appellee Walker, and that the other elements necessary to make out actionable fraud were established; that the reasonable market value of the Minnesota 320 acres was $23,360, or $73 per acre; that the mortgage given by Walker to Davis on the Jasper County 281-acre farm was $21,500; that the reasonable market value of the Jasper County farm was $22,480, or $80 per acre; that defendant Walker has made out a case entitling relief in damages in the amount of $22,380, being the difference between $44,860, which he paid Davis for the Jasper County farm by conveying his Minnesota land of the value of $23,360 and giving a mortgage on the Jasper County land for $21,500, and the value of the Jasper County farm; and that the notes. and mortgage in suit should be canceled and held for naught. Substracting the amount of the notes, $21,500, from the $22,380 damages found, reduces the damages to $880, with interest thereon to date of judgment, $100.47, making $980.47; and Davis, having paid the interest on the first mortgage on the Jasper County farm, which payment, with interest, thereon amounted to $818, was entitled to credit in that amount, leaving a balance of $162.47 due the defendant Frank Walker on his counterclaim, for which he was entitled to judgment against the plaintiff, J. W. Davis.

Appellant strenuously insists that the record does not afford

a proper measure of damages, and that defendant's action for damages must fail. Counsel for appellant argue that the rule for the measure of damages in this state is the difference between the market value of the property as it really was at the time of the purchase, and the market value thereof as it would have been, if as represented. Unquestionably, this is the rule laid down in *Stoke v. Converse,* 153 Iowa 274, after a review of the cases prior to that time, and this rule has since been adhered to. Counsel insists that the proof does not furnish a proper minuend from which to subtract the actual value of the Jasper County land, because appellee offered no evidence to show the value of the land, if it had been as represented. It is true that no such evidence is to be found in the record. Does the absence of such proof defeat defendant? We think not. Appellee might have offered evidence showing the value of the Jasper County land as it would have been if as represented, and thereby have availed himself of the measure of damages contended for by appellant, and approved by us in the *Stoke* case and other cases. The appellee, acting honestly on his own part, as we find he did, was entitled to the full fruit of his bargain, and could not be deprived of it without his consent by the fraud of appellant. But we think appellant cannot complain because appellee did not pursue such course, by offering proof of the value of the Jasper County land as it would have been, if as represented. Appellee, as we have found, paid appellant for the Jasper County land approximately $142 an acre. Undoubtedly, the farm would have exceeded that value, if it had been as represented. Appellant represented the land to be worth $175 an acre. The exchange of properties was made on the basis of approximately $162 per acre for the Jasper County land, and $75 per acre for the Minnesota land. It cannot be said, from the record, that these were valuations agreed upon, but they were the estimated prices on which the trade was made, as we gather from the record.

We think the proof found in the record furnished an unobjectionable measure of damages in the instant case. While appellee had a right to submit evidence invoking the approved rule, and thereby avail himself of the full fruits of his bargain, appellant cannot complain that he did not.

4. FRAUD: estoppel to question measure of damages.

The judgment of the lower court is modified by reducing the personal judgment for $1,845 to $162.47; and otherwise the decree and judgment are affirmed.—*Modified and affirmed.*

STEVENS and FAVILLE, JJ., concur.

EVANS, C. J., concurs in result.

### SUPPLEMENTAL OPINION.

ARTHUR, J.—To avoid misunderstanding of our holding as to measure of damages adopted in this cause, perhaps something should be added.

It is insisted by appellant, in petition for rehearing, that, by assessing damages in the amount of the differences between the price which Walker paid Davis for the Jasper County land, as found from the evidence, and the reasonable market value thereof, we depart from and abrogate the rule heretofore announced by this court in many cases, and even in this case,—that, as said in the *Stoke* case:

"The overwhelming weight of authority in this country approves the allowance, as to the measure of damages, of the difference between the actual value of the property at the time of the purchase and its value, if it had been what it was represented to be."

Our holding in the instant case is not intended to and does not effect a renunciation or abandonment of the rule announced in the *Stoke* case and other cases holding similarly. In such cases as the instant case, as in the *Stoke* case, the party claiming damages flowing from fraud has properly insisted upon the rule that gives the defrauded innocent party the full benefit of his bargain. But a party guilty of fraud, as was appellant, cannot consistently complain that the damage he has inflicted has been calculated in a manner more favorable to him and less favorable to the injured party. In some jurisdictions, and notably in our Federal courts, a party who has sustained damages is confined to measure his damages by the difference between the price paid—his outlay—and the value of the property purchased; the defrauding party is bound to make good the loss sustained, but his liability does not include the defrauded party's expected

bargain. Appellee, who has manifestly sustained great damage, may not be denied recovery because he has not availed himself of the approved rule, which might yield him larger damages. Since the proof shows appellee entitled to recover under the so-called Federal rule, the appellant cannot complain that appellee did not prove himself entitled to a larger amount, under the general rule.

The original opinion must be adhered to, and the petition for rehearing is overruled.