FRANK BAUMHOVER et al., Appellees, v. JOHN B. GERKEN et al., Appellants.

**EXCHANGE OF PROPERTY:** Fraudulent Representations—Unavailing Inspection—Effect. The plea that the party complaining of false and fraudulent representations in an exchange of land, had inspected the land prior to accepting it, and had full opportunity to learn all relevant facts, must necessarily fall when it is shown that an inspection *at said time* would not reveal the falsity of the particular representations relied on.

**EXCHANGE OF PROPERTY:** Fraud—Nonwaiver by Exercising Acts of Ownership. Fraud in an exchange of properties is not waived

by the victim of the fraud by exercising acts of ownership over the land received, at a time when he had not fully discovered the fraud practiced on him, and at a time when the other party was asserting that the contract was not fraudulent, and that the deal, if not satisfactory, would be mutually rescinded.

**Headnote 1:** 23 C. J. p. 194.  **Headnote 2:** 23 C. J. p. 218.

*Appeal from Carroll District Court.*—M. E. HUTCHISON, Judge.

APRIL 7, 1925.

REHEARING DENIED OCTOBER 2, 1925.

ACTION in equity, to rescind an executed contract for an exchange of farms, on the ground of fraud. From a decree for plaintiffs, defendants appeal.—*Modified and affirmed.*

*W. C. Saul* and *W. I. Saul,* for appellants.

*Salinger, Reynolds, Meyers & Cooney,* for appellees.

VERMILION, J.—The plaintiff and appellee Frank Baumhover was the owner of a 60-acre farm in Carroll County, situated a mile from the city of Carroll, upon which he had erected a dwelling at an expense of $7,500. The house was not entirely finished. There was a mortgage on the place for $10,000. The property for which he traded the Carroll County farm was a half section of land in Monona County, belonging to the appellant Gerken. There was no dwelling on it. It was low, flat land, with no tiling, and could not be successfully farmed more than about two years in five, on the average. There were first mortgages on the land to the amount of $18,000, due in 1926, and drawing 7 per cent interest, and a second mortgage of $16,000, that pledged one half of all the rents and profits accruing each year, to be applied on the principal. This mortgage drew 6 per cent interest. In the trade, Frank Baumhover was to give his Carroll County land, subject to the $10,000 mortgage, for the Monona County land, subject to the first and second mortgages, and execute a third mortgage thereon, to secure his note to the

1. EXCHANGE OF
   PROPERTY:
   fraudulent rep-
   resentations:
   unavailing in-
   spection: effect.

appellant Gerken for $9,000. In the final closing up of the trade, this $9,000 was reduced by $271.30, unpaid drainage tax against the Monona County land; and instead of the third mortgage, Frank Baumhover gave Gerken his note, with intervener, Louis Baumhover, as surety, for $8,728.70.

The plaintiffs pleaded that the appellant Gerken and one Millenacher, acting as his agent, represented, among other things, that the Monona County land was tiled; that, during the time Gerken had owned the land, he had received, as rent or income from it, enough to pay the interest, and have a balance remaining; that it was capable of producing 42 bushels of wheat and 90 bushels of corn per acre; and that land substantially like it in Monona County was selling for $300 per acre.

Baumhover had paid $500 per acre for the Carroll County land, at a time of inflated values; but, at the time of the transaction in question, it was worth, with the improvements he had put on it, about $250 per acre. The Monona County land was, we are satisfied, not worth at that time more than $125 per acre, or $40,000. The incumbrances assumed by appellee amounted to $32,000, less a payment of $593.83 that had been made on the principal of the second mortgage, or $31,406.17. This, with the $9,000 for which he agreed to give the third mortgage, or the $8,728.70 for which he gave his note, and the unpaid drainage tax, amounted to more than the value of the land. In addition, he conveyed his equity in the Carroll County land.

The points relied upon for a reversal relate largely to the sufficiency of the evidence to sustain the decree. While there is a conflict in the testimony, we are satisfied that the pleaded representations above referred to, and others, were substantially made, and were the inducement to the trade. They related to matters of fact respecting the land, and were clearly shown to be false, in some instances by the testimony of Gerken himself. It is admitted in the answer of Gerken that Millenacher was his agent, to find a purchaser for the land. No useful purpose would be served in setting out the testimony in detail. It is admitted that the land was not tiled; and it is doubtful if it could be successfully tiled, without deepening ditches adjacent to it, to furnish an adequate outlet. It was known to all parties that Baumhover was trading for the place for a home, and expected

to build on it; and Millenacher pointed out suitable building sites. The evidence shows that there was no place on the land suitable for building, without grading it up. Gerken testified:

"Judging from my experience, the land wouldn't pay the interest or taxes, except that it should be farmed different from what it had been. The men on there were good farmers."

His testimony as to the crops raised on the farm during his ownership of it shows that, save in one year, he had not realized enough to pay the interest and taxes.

It is urged that Frank Baumhover inspected the land on two occasions, before trading for it, and that he had ample opportunity to discover the facts for himself. The contract was entered into on April 27th. It is shown that other lands in the vicinity presented much the same appearance as the land in question, to the observer, but that, by reason of soil conditions and differences in drainage, they were much superior, and much more productive. It is also shown that, when on the land, Baumhover inquired about the outlet of the tile drains, and was told by Millenacher that it was three miles away, and that they would not have time to visit it.

The finding of actionable fraud has ample support in the evidence, and under well established rules of law found in our cases. *Davis v. Walker*, 191 Iowa 1268; *King v. Dykema* (Iowa), 195 N. W. 233 (not officially reported); *Larabee v. Gilbert*, 195 Iowa 501. It is not a case where the means of knowledge were at hand, and equally available to both parties. It could not be determined from an inspection of the land whether it was tiled or not. Nor, as we have said, could the difference between it and other land in the vicinity that appeared to be productive be ascertained from a mere inspection. The statements as to the income derived from the land in the past appeared to find confirmation in the appearance of the other land not far away, and were, under such circumstances, well calculated to deceive even one who inspected the land at that season of the year.

It is said that Frank Baumhover waived the fraud, or is estopped to rely upon it, by reason of having exercised acts of ownership over the land, leasing it, paying the interest on the

**2. EXCHANGE OF PROPERTY: fraud: non-waiver by exercising acts of ownership.** first mortgages, and securing an extension of the second mortgages. The deeds were exchanged May 15, 1923. Baumhover remained on the Carroll County land. It appears that otherwise each party was to have the use of the land he had traded for. There was testimony that, on June 27th or 28th, Baumhover complained to Gerken about the Monona County land, and said it was not as good as Gerken had said it was, and that they had better trade back; that it would save them both a lot of trouble; that Gerken said he was willing to put it back the way it was, and that he would come down tomorrow; that Gerken and Millenacher came the next day, and said the place was just what they had said it was, and that, if there was anything wrong, they would make it right; that they said that Pruter (an officer of the appellant bank that held the note for $8,728.70) had the papers, and that, if they couldn't, they would put the deal back the way it was. Still later, appellee discovered that other representations that the first mortgages could be paid at any interest-paying date were false, and that they could not be paid until due, in 1926. This fact rendered ineffectual the assurance that Gerken and Millenacher had given him, that they would help appellee secure a new loan, at a lower rate of interest. As the season advanced, it became more and more apparent that the crops growing on the land would be injured by the water-soaked soil, and could not be harvested. It had been represented that the land was leased. After the execution of the deeds, Gerken procured written leases from the tenants, and assigned them to Frank Baumhover. They were no more than such leases as Gerken and Millenacher had represented were in existence at the time of the trade. The interest on the first mortgages came due, and Frank Baumhover paid it; and he also secured an extension of the second mortgage. These things were done with the full knowledge of Gerken, and during the time when Frank Baumhover claimed he was insisting that the land was not as represented, and that Gerken was assuring him that it was all right,—that the crops looked bad, but would come out all right; that they had looked bad before, and been all right; and that he would make it right, or trade back. Gerken was clearly not prejudiced by these things. There is no element of estoppel; nor

do we think they amounted, under the circumstances, to a waiver.

As a part of the relief granted, the decree canceled the note of $8,728.70 signed by Frank and Louis Baumhover. Before the trade was made, the appellant State Bank of Arcadia held a third mortgage on the Monona County land, to secure the indebtedness of Gerken. This mortgage was released, to permit the trade to be made; and thereafter, Gerken transferred the note of Frank and Louis Baumhover to the bank, as collateral security. The bank was also the holder of a mortgage on the Carroll County land, executed by Gerken and wife after the deeds were exchanged. The appellants Rehker and Maher were also the holders of mortgages on the Carroll County land, executed by Gerken. The debts secured by these mortgages were all pre-existing debts,—there was no new consideration. The one to Maher was executed voluntarily, and without the knowledge of the mortgagee. These mortgages were all set aside. We find no suggestion on behalf of appellants, either in brief points or argument, that the bank, as the holder of the Baumhover note, or the bank, Rehker, or Maher, as mortgagees of the Carroll County land, have any rights superior to, or in any respect different from, those of Gerken. It appears to be conceded that they must stand or fall with him. We have, therefore, no occasion to consider more than the right of Frank Baumhover to rescind as against Gerken. This right we think is established by the evidence. The cancellation of the note given by Frank and Louis Baumhover is an incident of the rescission.

The appellees pleaded an offer to restore to Gerken anything received from him. Complaint is made that the decree did not require the repayment of $75 paid by Gerken to Frank Baumhover for existing insurance on the buildings on the Carroll County farm. The decree will be modified, to require the deposit of this amount, with interest, with the clerk of the district court, to be turned over to Gerken on the surrender of the policies, properly assigned. So modified, the decree will be affirmed, with costs against the appellants.

A motion to strike appellees' additional abstract and argument will be overruled.—*Modified and affirmed.*

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.